# CHARLESTON.

SHIELDS, ET AL., *vs.* MCCLUNG, ET ALS.

WILLIAM H. SHIELDS AND J. C. BROWN, PLAINTIFFS AND APPELLANTS AGAINST SAMUEL MCCLUNG AND W. W. GORDON, COMMISSIONERS, AND HIRAM SCOTT'S DEFENDANTS AND APPELLEES.

1873.
January
Term.

| | |
|---|---|
| 6 | 79 |
| 35 | 537 |
| 6 | 79 |
| 39 | 604 |
| 6 | 79 |
| 47 | 47 |
| 6 | 79 |
| 55 | 464 |
| 55 | 465 |

Decided February 21st, 1873.

## SYLLABUS.

1. McC., and G., Commissioners appointed for the purpose in a chancery cause by the Circuit Court of Greenbrier county, sold land to H. S., and H. S., signed a bond for the purchase money to McC., and G., describing them therein as commissioners. H. S., after signing the bond presented it to S., and B., who signed it with the distinct understanding and positive agreement, that the same should not be binding upon them until it had been signed by R. H. G., T. A. B., and others, and before the bond was delivered to McC., and G., they had due notice of the agreement and it was delivered to them as an escrow with full notice that it was such, and that it was not the deed of S., and B. R. H. G., and T. A. B., never executed the bond. McC., and G., brought an action upon the bond in a Court of law, and the obligors were served with process, but suffered judgment to go against them by default. HELD:

Upon these facts substantially alleged in a bill of injunction filed by S., and B., enjoining the judgment at law, on a motion to dissolve the injunction (no answer being filed) that the facts stated in the bill as a defence against the bond, were available, and might have been made as a defence in the action at law, under a plea of *non est factum*, and that S., and B., having failed to make the defence in the action at law were not entitled to be entertained for relief against the judgment at law upon the facts stated, in a Court of Equity, unless they alleged in their bill a good and sufficient excuse for not making the defence in the action at law.

2. For excuse for failing to make the defence in the action at law S., and B., allege in their bill that B., is a resident of Kanawha county; that the action at law was brought in Greenbrier county, and that B., immediately on being served with the summons wrote to S., and another person to employ an attorney designated in the letter to defend the action; that S., as requested spoke to the attorney, but was told by him, that he was counsel for the Plaintiffs; and in the conversation which ensued he remarked to S., that the action would not likely be called for trial at the next term, meaning the April term, 1871,—that S., then went to, and employed another attorney to defend the action—that he agreed with him upon the fee to be paid, and stated to him the nature of the defence to the action; that having been informed that the case could not possibly be tried at said term of Court, he made no further preparation about the defence, and thought no more about the matter until after the adjournment of the said term of Court, when he was surprised to learn that judgment had been rendered for the amount of the bond; that he at once went to the attorney he employed, and learned from him that he did not defend the action, because he did not understand that he had been definitely retained in the case, but expected to see him, (S.,) again and conclude the contract, and get all necessary information for the defence; that this was entirely in conflict with the understanding of S., who thought the arrangement for the defence had been concluded, and that he had nothing further to do until notified by the counsel; that B., relied upon S., to employ counsel, and defend the action, and that after B. wrote the letters, he knew nothing whatever about the matter until he found execution against him in the hands of the Sheriff. HELD,

The facts alleged do not constitute a good and sufficient excuse, for not making the defence in the action at law, and that a Court of Equity ought not to entertain the bill and grant relief.

3. "That a party to whom a day and opportunity have been allowed to make his defence against a demand set up against him in a Court of law, but who has wholly failed to avail himself of them,

will not be entertained in the Court of Chancery on a bill seeking relief against the judgment which has been rendered against him in consequence of his default, upon grounds which might have been successfully taken in the Court of law, unless some reason founded in fraud, accident, surprise, or some adventitious circumstance beyond the control of the party, be shown why the defence was not made in that Court."

4. When a bill of injunction does not contain sufficient equity to give a Court of Equity jurisdiction, and the Judge of the Court upon irregular notice of a motion of Defendant to dissolve when there is no answer filed, dissolves the injunction, and the Plaintiff in the injunction afterwards in term moves the Court to re-instate the injunction, and the Court refuses—The Appellate Court ought not to reverse either of the orders dissolving or refusing to re-instate the injunction.

5. A Court of Equity appoints special commissioners to make sale of land in a pending cause for the purposes thereof, and the sale is made accordingly; a Court of Equity should not entertain a bill of injunction to enjoin the collection of a judgment at law rendered upon a bond given to the commissioners for the purchase money, upon allegations that the commissioners have no title to the land, and that no deed has been made or filed as an escrow for the same, and that the title to the land is in another person, especially where such person is a party to the suit in which the decree of sale is made.

6. Where a decree appointing special commissioners to make sale of land, was made by a Circuit Court of the State of Virginia of a county within the boundaries of this State, and said decree was in force at the formation of this State, it is not necessary to authorize the commissioners to act under the decree that they should be re-appointed by the Circuit Court of the county, after the formation of this State—Such commissioners are not public officers.

7. An injunction may be dissolved upon motion before process is served on the Defendant.

The opinion of Judge Haymond contains a sufficient statement of the case.

*Snyder* for Plaintiff and Appellant.

FIRST ERROR—The injunction should not have been dissolved on an *ex parte* motion in Chambers until a sufficient notice had been given to the Plaintiffs. The notice given in this case was too general, vague and un-

certain. It neither specified the grounds of the motion nor the place at which the motion would be made. Miller *vs.* Traphagan, 2 Halst. ch. 200.

SECOND ERROR—The injunction should not have been dissolved until the Plaintiffs had an opportunity to have process served on all the Defendants. Until the cause had been matured the injunction should not have been considered in vacation. Code, ch. 133, §§4 and 12, pp. 631-32, app. p. 742.

THIRD ERROR—The bill, if true, showed sufficient grounds for relief, and should, therefore, not have been dissolved for want of equity. (1) A motion to dissolve on the face of the bill is like a demurrer and admits as true all the matters properly stated therein. Titus *vs.* Mabee, 25 Ill. 257, Peatross *vs.* McLaughlin, 6 Grat. 64. (2). The judgment in this case is founded upon a void bond—an instrument which never was the obligation of the Plaintiffs: consequently the judgment is without consideration and unconscionable, and on that ground will be relieved against in Equity. Hilliard on Inj. 177. "Equity will relieve against a judgment at law upon a void contract, although the defence might have been made at law." Lucas *vs.* Waul. 12 Sur & Mar. 157. Barrett *vs.* Floyd 3 Call, 536.

In a doubtful case the Court will ordinarily grant the relief prayed for; and thus prevent injustice and oppression. Hilliard on Inj. 15; Ballard *vs.* Fuller, 32 Barb. 68.

The conduct of the Plaintiffs in this case is not characterized by negligence, but from misapprehension the judgment at law was obtained by default. In Fenton *vs.* Garlick, 6 Johns. 287: the Defendant's attorney had sent a plea to be filed in the case, but the person by whom it was sent neglected to file or deliver the plea. The Court held, that "the omission to plead in time arose from *accident, not negligence.*" The following cases are in point, and show that relief should be granted in the case at bar: Lee *vs.* Baird, 4. H. & M. 453; Barrett et

als. *vs*. Floyd et als.; 3 Call, 464 (side p. 536); Richardson *vs*. Johnston, 2 Call, 527-29; Isaac *vs*. Johnson, 5 Munf. 95.

In Pickett *vs*. Morris, 2 Wash. 255. the Court, held: that equity would relieve againt an *unjust judgment* unless there had been a *full* and *fair* trial at law. In the case at bar there was no trial. See the following cases: King *vs*. Smith, 2 Leigh 157: West *vs*. Logwood, 6 Munf. 491; Mayo *vs*. Bentley, 4 Call 528; Mason *vs*. Nelson, 11 Leigh 227; Day *vs*. Welles, 31 Conn. 344; Owens *vs*. Ranstead, 22 Ill. 161.

When, by the neglect of an attorney, a party was defaulted, the judgment was enjoined in equity and a new trial granted. Hacbesch *vs*. Baker, 7 Wisconsin R. 542. This case is directly in point and rules to the case at bar.

FOURTH ERROR—The Court erred in refusing to reinstate the injunction upon the amended bill, which should have been done upon the ground that the judgment was without consideration and obtained by persons who had no title to the cause of action. Relief against such a judgment could be had only in equity and no excuse was necessary for not defending at law.

"After an injunction has been dissolved on the merits, the complainant may amend and obtain an injunction on the amended bill." Hilliard on Inj. 126 §80; Arnold *vs*. Kreissler, 22 Texas 580.

"A Court of Chancery is always open to reinstate as well as to grant an injunction." Hilliard on Inj. 132 §98; Radford *vs*. Innes, 1 H. & M. 7.

FIFTH ERROR—The obligees of the bond having full notice that it was conditional, it was fraud in them to attempt to enforce the payment until it was completed. In this view a Court of Equity has concurrent and original jurisdiction. *Vide* 3 Abb. (N. Y.) Dig. p 224 *cls*. 145, 146, 147 and 152; 4 Id. p 23 *cls*. 1 and 2, p 132, *cls*. 133-4.

Thompson *vs.* Graham, 1 Paige 384 *in point.* Apthorpe *vs.* Comstock, 1 Hop. ch. 143 and 8 Cow. 386.

*Mathews & Mathews* for Defendants and Appellees, McClung and Gordon.

As to the assignment of errors:

First, The notice of a motion to dissolve the injunction *"in Chambers"* is sufficient. "In Chambers" is a private place where a Judge sits to hear and determine cases and do such business of the Court as may be done out of the Court, and is presumed to be as well known to the attorneys practising in his Circuit, as the building in which the Courts are held.

The process issuing upon a bill of injunction is intended to inform the defendant that an injunction has been awarded, and to summon him to answer the bill. If he has actual knowledge of the injunction, and waives the service of process, it is a matter of which the Plaintiff can not be heard to complain. The plaintiff is only entitled to reasonable notice of a motion to dissolve—see Code of West Virginia. p. 742—which in this case was given.—The Record does not contain a copy of the process and return; and if it was necessary that the process should be executed before the injunction could be dissolved, in the absence of any evidence to the contrary, the Court would assume that it had been executed, as was, in fact, the case as shown by a certified copy of the return.

Second, The bill, on its face, does not show sufficient grounds for an injunction. It is not clear that the statements of the bill, with regard to the execution and delivery of the bond upon which the judgment was obtained, would have constituted a sufficient defence at law. It is unnecessary, however, to consider this question since the bill does not show that the Defendant had a sufficient excuse for not defending the action.

It is alleged in the bill, that the Appellant, Brown, did nothing to defend the action, and intended to do nothing except to write to his co-Defendant, upon whom he relied to defend the suit; that the Defendant, Shields, spoke to the attorney of the Appellees, and was informed by him of his relation to the case, and that the case would not likely be called at the April term, 1871; that he went to another attorney, employed him and agreed with him upon a fee to defend the suit; that it was not the understanding of this attorney that he was employed, and that judgment was rendered at the April term, 1871. It is not even alleged that due diligence was used in the employment of counsel and preparation of the defence. With the use of such diligence the Appellant would have known certainly whether he had employed an attorney, and the attorney would have known whether he was employed. It is not claimed that the attorney forgot that he had been retained, but that his understanding of the interview was very different from that of the Appellant, Shields. Due diligence and proper distinctness, on the part of Shields, in the alleged conversation, could have left no doubt on the mind of the attorney as to whether he had been employed.

Courts of Equity reluctantly interfere to restrain proceedings in a Court of law, especially after judgment, and relief will be granted against a judgment only on grounds of which the complainant was prevented from availing himself by fraud, accident, mistake, or the act of the opposite party, without any negligence or fraud on his own part.

Hilliard on Injunctions, p. 177, and cases there cited; Ib. 178. Laches or negligence will be a bar to equitable relief; Ib. p. 186, a, and p. 187, a.

Where the Defendant or his attorney neglected to make a defence which could have been made, the judgment in the absence of fraud, surprise or mistake, will not be enjoined. And it has been held a sufficient

ground of refusal that the bill itself shows a good defence.—Ib. pp. 187 and 188; Houston *vs.* Wolcote, 7 Clarke, 173; Hilliard on Injunctions, p. 191, §31, pp. 192 and 193, and note. See also, Yancey *vs.* Fenwick, 4 H. & M. 425; Steward *vs.* Rosser, 4 H. & M. 438; 3 Daniel's Ch. P. Marginal pages 1841 and 1842; 2 Story's Equity Jurisprudence, §§887, 888, 894, 895, 896 and 897; 8 Leigh, 114; 10 Gratt. 506, 509, 510; 18 Gratt. 364.

The amended bill discloses no ground for relief. It is not pretended that the facts stated in the amended bill were not known to the plaintiff when the action was tried, and when the injunction was awarded.

The ground for a bill to obtain a new trial after judgment, in an action at law, must be such as would be ground for a bill of review of a decree in a Court of Equity, upon the discovery of new matter.—2 Story, §888; 2 Mitf. Eq. Pl. by Jeremy, 131; Hoyd *vs.* Jayne, 6 Johns. Ch. R. 479. Woodworth v. Van Buskerk 1. Johns. Ch. R. 432.

HAYMOND, PRESIDENT:

This is a Bill of Injunction to a judgment rendered at law, upon a paper writing purporting to be the bond of the Plaintiffs and Defendant, Hiram Scott. The judgment at law against which the bill is filed is a judgment by default. Process was duly served on the Defendants in the action at law, but they failed to appear and make defence. The original bill filed in the cause avers that the paper or pretended bond on which judgment was rendered is not, and never was the bond of the Plaintiffs or either of them; that the consideration of the supposed bond, was a small lot of land near the town of Frankford, in Greenbrier county, sold for the purpose of making the same a graveyard, to be paid for by sundry persons living in and near the town; that the defendant Hiram Scott, contracted with the said commissioners for the purchase of the lot, executed the aforesaid writing, and presented it to the Plaintiffs, who signed it with the

distinct understanding, and positive agreement that the same should not be binding upon them, until it had been signed by Richard H. Gillilan and T. A. Bell, and several other persons; that long before said bond was delivered to the obligees thereof, they had due notice of the said agreement, and that it was delivered to them as an escrow, with full notice that it was such, and that was not the deed of the Plaintiffs; that R. H. Gillilan and T. A. Bell, never did execute the supposed bond and that the same is void as to the Plaintiffs.

The Plaintiffs claim upon the facts above stated, that although they could have filed their plea of *non est factum* to the supposed bond in the action at law, and made complete and successful defence thereto—that still, their defence against said supposed bond is an equitable defence, of which they can avail themselves in a Court of Equity, as well as a Court of law; and not having availed themselves of their right and privilege of making their defence against the supposed bond, in the action at law, they have the right to be entertained in a Court of Equity, and upon the facts be relieved from the payment of the judgment rendered upon the supposed bond. In support of this principle the Court is referred to the case of King *vs.* Smith and others in 2d vol. of Leigh's Reports, page 157. The syllabus of that case reads thus; "P. agrees to join H. W., as his surety in a forthcoming bond, and executes and delivers the bond as an escrow, upon condition that K., shall also join in and execute the bond as co-security; and K., agrees to join as surety in the bond, and executes and delivers the same as an escrow, upon condition that O. W., also shall join in and execute the bond as co-security; but O. W., never unites in the bond. Held: that upon this state of facts, neither P., nor K., are liable for any part of the debt *in equity*, any more than they would be liable for any part of it at law, where the facts would amount to proof of *non est factum*." In the above case there was execution awarded upon the forthcoming bond. King filed his bill of in-

1873.
January
Term.

Shields et al
v.
McClung et als

junction, but he averred in his bill that the reason why he did not set up his defence against the forthcoming bond upon the motion for award of execution on the bond, was that he never had any notice of the motion— It does not appear from the statement of the case that King's averment in this respect was denied by the opposite party. The prayer of his bill was that further proceedings at law upon the bond be enjoined. But, King's excuse for not making his defence at law, was, that he did not have notice of the motion to award execution. Of course if he did not have notice of the motion for award of excution there was good reason for his not appearing to the motion and making defence thereto and that reason seems to have been considered sufficient to entitle him to ask a Court of Equity to take jurisdiction, and relieve him against the bond, and execution thereon, as I infer from the report of the case. From the statement of this case as reported it would seem that the Court took jurisdiction not because the defence was an equitable one but because King not having had notice of the motion, had no opportunity of defending himself against said bond at law. Porterfield, the other surety, also exhibited his bill in the same Court; in which referring to King's bill, he stated that he had signed the bond, upon the express condition that King should join them as his co-surety, otherwise the bond should not be obligatory on him; and that finding from King's bill, he had never so excuted the bond as to make it his deed, if it was not obligatory on King it was not obligatory on Porterfield. So that Porterfield did not make defence to the motion because he had not then discovered the facts in relation to King signing the bond. Under these circumstances I don't think this case establishes the principle maintained by Plaintiffs. In the case of Haden vs. Garden, to be found in 7th Leigh, page 157, it was decided, that "S., by fraud and deception practised on G., procures him to execute a bond to H., upon which H., brings suit against G., and recovers judg-

1873.
January
Term.

Shields et al
v.
McClung et als

ment against him by default; G., files a bill in equity to be relieved against the judgment on the ground of the fraud practised upon him, without assigning any reason for not having defended himself at law. Held: that as he might have defended himself at law on a plea of *non est factum,* he is not relievable in equity." It was further held in same case that "though Courts of Equity and Courts of law have a concurrent jurisdiction in cases of fraud, yet if a suit be first brought in a Court of law, in which the question of fraud may be tried and determined, the party injured by the fraud must make his defence there; and if he neglect to do so, the Court of Equity has no jurisdiction to relieve him." The principles decided by this case are in direct opposition to the principle contended for here by the Plaintiffs. In the case of Slack *vs.* Wood, commencing on page 40 of 9th Grattan, Judge Lee, who delivered the opinion of the Court, says: "The grounds on which a Court of Equity will interfere to grant relief against a judgment at law, are confessedly somewhat narrow, and restricted. It is not sufficient that injustice has been done, but it must appear also that it was not occasioned by the inattention of the party complaining." In 6th Johnson, ch. R., in the case of Floyd *vs.* Jayne, 469, Chancellor Kent, in speaking of this subject, says: "it would be establishing a grievous precedent, and one of great public inconvenience, to interfere in any other case than one of indispensable necessity, and wholly free from any kind of negligence." "This doctrine, (says Lee, Judge, in the case of Slack *vs.* Wood,) has been fully recognized in this Court;" and in support of the position he cites on page 43 of 9th Grattan, a large number of the Virginia decisions. In the case of Faulkner's Adm'x *vs.* Harwood, 6th Randolph, 125, it was held "that a Court of Equity will not grant relief merely because injustice has been done: The party applying for a new trial, to entitle himself to it, must show that he has been guilty of no laches; that he has done everything that could reason-

ably be required of him to render his defence effectual at law." In the case of Allen, Walton & Co., *vs.* Hamilton, in 9th vol. Grattan's reports, page 257, Judge Allen, who delivered the opinion of the Court, says: "The numerous decisions of Court cited in the argument, to which may be added the case of Slack *vs.* Wood, decided during this term, have established the rule that a party having a good legal defence, shall not, after a judgment at law, bring the case into equity upon the legal matter, without alleging and proving a good excuse for not using it at law; and moreover that a Court of Equity will not grant relief merely because injustice has been done."

In the case of Meem *vs.* Rucker, to which I have before referred, on page 509. 10. Grattan's Reports, Judge Lee in delivering the opinion of the Court, which was concurred in by all the other Judges, employs this language: "Now, that a party to whom a day and opportunity have been allowed to make his defence against a demand set up against him in a Court of law, but who has wholly failed to avail himself of them, will not be entertained in the Court of Chancery on a bill seeking relief against the judgment which was rendered against him in consequence of his default, upon grounds which might have been successfully taken in the Court of law, unless some reason founded in fraud, accident, surprise, or some adventitious circumstance beyond the control of the party, be shown why the defence was not made in that Court, is a proposition which has been so repeatedly affirmed that it has became a principle and maxim of equity as well settled as any other whatever. It has been recognized and acted upon in very numerous cases in this court as well of ancient as of recent date.  *  * The rule has its foundation in wisdom and sound policy. It springs out of the positive necessity for prescribing some period at which litigation must cease.  *  *  I think that private right and public interest alike require that it should be adhered to.." This language is clear and explicit, and when applied to this case determines

beyond question that the Plaintiffs having a legal de-
fence to the action at law, and having failed to avail
themselves of the privilege of making it in that Court
are not entitled to be entertained in a Court of Equity
in order that they may make the defence therein, as a mat-
ter of right, and obtain relief against the judgment com-
plained of. It may be said that the judgment is evi-
dently unjust, and that the rule that excludes relief against
it in equity is hard. To this there is a reply, which I
think must be satisfactory and conclusive. The reply was
made by Lord Redesdale in the case of Bateman *vs.*
Willoe, 1 Sch. & Lef. page 204, and is in this language:
"Rules are established, some by the Legislature, some
by the Courts themselves, for the purpose of putting an
end to litigation; and it is more important that an end
should be put to litigation than that justice be done in
every case."

It is argued by the counsel for the Plaintiffs, earnestly,
and with ability, that Courts of Equity grant relief to
judgments at law upon void bonds, without requiring
any excuse to be given for failing to make defence at
law. The bond in question, however, was not void in
its creation, but only voidable. I do not think Courts
of Equity will, as a matter of course, grant relief against
judgments on all void bonds. It is clear that equity
will grant relief to judgments at law founded on a gam-
ing debt, although the party failed to defend himself at
law, and gives no good reason for such failure. This is
decided in the case of Lucas *vs.* Waul *et al.*, in 10
Smede's & Marshall's Reports, page 157. See also Hil-
liard on Injunctions, second edition, page 198. The
jurisdiction of equity in such case is held and decided
in the case of Woodson *et al. vs.* Barrett & Co., 2 Hen.
& Munford, 80. In the case of Skipwith *vs.* Strother *et
al.*, 3 Randolph's Reports 214, it is held that "A
Court of Equity has jurisdiction to relieve against a
judgment founded on a gaming debt, although the party

1873.
January
Term.

Shields et al
v.
McClung et als

failed to defend himself at law, and gives no good rea-
son for such failure." But these decisions are "placed on
the ground of the original vice of the transaction." "It
is said, that the bond being absolutely void in its crea-
tion, could be made valid by no subsequent transaction,
immediately growing out of it," and that the circulation
of these gaming bonds is an evil no less to be discounten-
anced than the giving of them; and that no means are more
likely to prevent the giving of them, than to put an
effectual stop to their circulation." See the opinion of
Judge Tucker in the case cited in 3 Randolph, page
216. Thus it is clear that the jurisdiction exercised in
such case by Courts of Equity is taken from public policy
in discouragement of gaming, because of the vice of
the transaction, and upon the principle that the bond
"being absolutely void in its creation" cannot "be
made valid" by any "subsequent transaction, immedi-
ately growing out of it." Equity jurisdiction in such
case, is exercised for peculiar reasons, and is special, and
an exception to the general rule governing Courts of
Equity, as to granting relief to judgments at law. I
have consulted Hilliard on Injunctions, referred to by
Plaintiffs' counsel, on pages 177, 178 and 179, and I
find that the rules there asserted and maintained are
about the same as the rule so well and ably stated by
Judge Lee in the case of Meem vs. Rucker. Having
concluded that "the defence now sought to be made by
the Plaintiff against the bond in question is one en-
tirely appropriate to a Court of law," and as the Plain-
tiff has had a day in that Court in which he might have
set up "his defence, but failed to do so," "the next in-
quiry to be made is whether a good and sufficient reason
has been shown in excuse of this failure." And here it
is but proper to remark that in considering the suffi-
ciency of Plaintiffs' bill all the allegations thereof are to
be taken as true, there being no answer filed. Plaintiffs,
by way of excuse for not making defence at law allege
that plaintiff Brown is a resident of Kanawha county,

1873.
January
Term.

Shields et al
v.
McClung et als

that when the summons in the action at law was served upon him, he immediately wrote to plaintiff Shields, and also another person, to employ an attorney designated in his letter to defend said action; that Shields, as requested, spoke to the attorney, but was informed by him that he was counsel of Plaintiff in the action at law, and in the conversation that ensued he remarked to Shields, that the action would not likely he called for trial at the next term, meaning the April term, 1871; that Shields then went to another attorney and employed him to defend said action; that he agreed with said attorney the fee to be paid, and stated to him the nature of the defence to the action; that having been informed that the case could not possibly be tried at the April term, 1871, of the Court, he (Shields) made no further preparation about the defence, and he thought no more about the matter, until after the adjournment of the April term, 1871, of Court, when he was surprised to find that judgment had been rendered; that he immediately went to his attorney and learned from him that he did not defend the action, and that he did not defend it because he did not understand that he had been definitely retained in the case, but expected to see Shields again and conclude the contract and get the necessary information for the defence; that this was in conflict with Shields' understanding, who thought the arrangement for the defence had been concluded, and that he had nothing further to do until notified by counsel; that Brown relied entirely upon Shields to employ counsel, and defend the action; that after writing the letters he knew nothing whatever about the matter, until he found an execution in the hands of the Sheriff against him for the debt.

Does this alleged excuse show "some reason founded in fraud, accident, surprise, or some adventitious circumstance beyond the control of Plaintiffs, why the defense was not made in the Court of law?" I think not. On the contrary giving the most liberal construction to the

1873.
January
Term.

Shields et al
v.
McClung et als
excuse as stated, the Plaintiffs have been guilty of inexcusable laches and neglect about making defence at law. It must be noted that the general doctrine is, "that Courts of Equity reluctantly interfere to restrain proceedings had in Courts of law." Hilliard on Injunctions, page 187, second edition. The party applying must show that he has a good defence, of which he had no knowledge until after judgment, or that he was prevented from using it by fraud or accident, or the act of the adverse party unmixed with negligence or fault on his part. Same author, 189. "The party applying for a new trial, to entitle himself to it must show that he was guilty of no laches." Faulkner's Administrator *vs.* Harwood, 6 Randolph 125. "Equity will not relieve against a judgment at law, because the attorney who conducted the defence, through ignorance or design, managed the case unskilfully. Nor because the complainant was deprived of the benefit of a defence, pleaded by him in the suit at law, in consequence of another plea subsequently filed by his counsel. Hilliard on Injunctions, page 188. See also Stanard *vs.* Rogers, 4th Hen. & Mun. page 438. Brown wrote to Shields and another, after he was served with process, but after writing the letters he knew nothing whatever about the matter, until execution was out against him upon the judgment. He relied upon Shields to employ counsel and defend the case. It may be safely asserted that Brown did not exercise reasonable dilligence in the matter. I would infer that he did not receive answers to his letters; still he was content to know nothing about it till after judgment. Shields spoke to the attorney to whom he was directed by Brown in accordance with Brown's request, but was informed by the attorney that he was counsel for Plaintiff in the action at law, and in the conversation the attorney remarked to him that the action would not likely be called at the next term. But he did not tell him it would not be called, or that it would not be tried, or give him any assurance in that regard. He says he

1873.
January
Term.

Shields et al
v.
McClung et als

then went to another attorney and employed him to defend the action, that he agreed with the attorney upon the fee to be paid, and stated to him the nature of the defence. He does not say that he paid the attorney a fee, or that the attorney told or assured him that the case would not be tried at the April Court. He does say that having been informed that the case could not be possibly tried at the April Court he made no further preparation about the defence, and thought no more about it until after April Court, at which there was judgment; but for some cause he fails to disclose to the Court who informed him "that the case could not possibly be tried, &c.," or when he was so informed. He does not allege that the information was derived from the Defendants, or from any one on whom he had a right to rely. Still on account of this information he made no further preparation about the defence, and he thought no more about it, until after judgment, and then he went to his attorney and learned from him that he did not understand that he had been definitely retained in the case, but expected to see him again and conclude the contract, and get information for defence. The attorney did not consider he was employed, or that he had sufficient information to make defence, but expected to see Shields, &c. Taking the statements of the bill on this subject together it seems that Shields made no definite contract of employment of counsel. That the counsel did not consider himself employed, but that he and Shields had talked about it. Shields should have made such definite and clear contract of employment with this counsel as without doubt would have entitled him to his services in making his defence and impressed the counsel with the knowledge that he was employed. But Shields made no preparation, failed to see the attorney, and have his plea prepared, which, if *non est factum*, could not well be prepared and filed in his absence, as such plea must be verified by an oath; and he failed to attend Court or to give the matter any at-

1873.
January
Term.

Shields et al
v.
McClung et als

tention.  Shields and Brown had both been summoned,
and thus warned, if they had defence, to make it.  Still
they failed to make defence or to exercise reasonable
diligence in the matter.  In a word, it seems clear that
they have failed to show " that they have been guilty of
no laches; and that they did everything that could rea-
sonably be required of them to render their defence
effectual at law."  It may be said, that they did nothing
that can be called diligence.  I have carefully examined
all the authorities cited in argument to which I have
been able to have access, and have considered them in
connection with the statements of the bill, and the
authorities to which I have referred, and I can bring
my mind to no conclusion, except, that the Plaintiffs do
not show by their bill a good excuse for not making
their defence to the action at law; and I think the in-
junction was improvidently awarded.

It is argued by Plaintiffs' counsel that the notice to
dissolve the injunction is too vague and uncertain, that
it neither specifies the place or grounds of the motion—
The notice is given by defendants, McClung and Gor-
don, and service is accepted.   In the notice it is stated
that on " the 15th day of July, 1871, we will move, be-
fore the Judge of the Circuit Court of Greenbrier coun-
ty in chambers for a dissolution of an injunction grant-
ed you, &c."  The day is specified, but the place is not,
except by the words "before the Judge of the Circuit
Court of Greenbrier county, in chambers."   Hilliard on
Injunctions, page 100, says " A motion to dissolve an
injunction before answer, and without notice to the Com-
plainant, is regular, if made on the ground that admit-
ting the allegations of the bill to be true it contains no
equity."   This proposition with some limitation may be
true in this State, when the motion is made in Court, but,
it is questionable, when the motion is made before the
Judge in vacation.   The act of the Legislature passed
February 24th, 1870, provides that a Judge of a Circuit
Court in which a case is pending, wherein an injunction

1873.]
January
Term.

Shields et al
v.
McClung et als

is awarded may in vacation dissolve such injunction after reasonable notice to the adverse party. This act seems to be the only authority for dissolving an injunction in vacation. Strictly speaking the notice may not be sufficiently specific as to place—I am not prepared to say that the notice is not otherwise sufficient to dissolve for want of equity in the bill. Hilliard Inj., 100. If the Plaintiffs' bill was sufficient on its face and they had not afterwards appeared before the Judge of the Court in term and moved to re-instate the injunction as hereinafter stated, I should feel inclined to favor reversing the order dissolving the injunction in vacation. But on the 19th day of October, 1871, the Plaintiffs filed their amended bill in the Circuit Court of Greenbrier county in term, and moved the Court to re-instate the injunction theretofore granted, and which had been dissolved in vacation, and the Court after considering the motion until the 19th day of December, 1871, overruled the motion. A Court of Equity is always open to re-instate an injunction where it is right and proper it should be done, and if Plaintiffs' bill had been meritorious, it would have been proper for the Court to have re-instated the injunction upon Plaintiffs' motion without the amended bill, but as the original bill, according to the view I have taken did not contain sufficient matter to give equity jurisdiction, I think the Court did right in refusing to re-instate the injunction, leaving the amended bill out of view; for if the Court had re-instated it, it would have been obliged to have dissolved it on motion. But it is argued that if the original bill did not contain sufficient equity to give jurisdiction, the amended bill did, and that the Court erred in refusing to re-instate upon the allegations of the amended bill. The original and amended bills when taken together, allege upon the subject of the title of the land for which the bond was given, substantially, that the title to the land is in the heirs of Charles McClung, deceased, that the defendants, Gordon and McClung, have no title thereto; that no deed

13

has been filed as an escrow for the same, but the bills further allege that in a suit in the late Circuit Court of Greenbrier county, of Smith and wife against the heirs of Charles McClung, and others, McClung and Gordon were appointed commissioners to sell the land by decree of the *late* Circuit Court of Greenbrier county, Virginia, and that the bond was given to McClung and Gordon for the land they sold as commissioners. Of course if they as Commissioners sold the land under decree of Court the title to the land was not in them, but it was in the heirs of Charles McClung and those heirs were parties to the suit; and it was competent for the Court upon the land being sold by the Commissioners to invest the purchaser with the title of the heirs of McClung. It frequently occurs that the Court does not direct title to be made to the purchaser until the purchase money is paid. The Commissioners in selling the land were only acting as agents of the Court, and so in collecting the purchase money for the purposes of the suit. A Court of Equity will not grant an injunction to stay the collection of land sold by its commissioners in obedience to its decree, upon allegations that the title is not in the Commissioners. The bill further alleges " that the authority of the Commissioners to collect the money, if they ever had any, ceased with the jurisdiction of the late Circuit Court of the State of Virginia; that they have no authority to act under the laws of the State of West Virginia; that they have not been re-appointed under the laws of the latter State, and that without such re-appointment their acts are void,"—Plaintiffs in making these allegations are mistaken, as may be seen by the provisions of the 8th and 9th sections of article 11 of the late Constitution of this State. In the 8th section it is expressly provided that all civil and criminal suits and proceedings pending in the County or Circuit Courts of the State of Virginia held within the boundaries of this State, shall be docketed and thereafter proceeded in before the Circuit Court of the proper county—The 9th

section provides that "the records, books, papers, seals, and other property, &c., of the former Circuit or County Courts, within the State of West Virginia, shall be transferred to and remain in the care and custody of the Circuit Courts of the respective counties; to which all process outstanding at the time this Constitution goes into operation shall be returned, and by which new process in suits then pending, or previously determined, in the said former Courts, may be issued in proper cases, &c." Under these sections and the legislation on the subject causes in the Circuit and County Courts in the various counties in this State took the same position in the Circuit Courts of the counties as they did in the Circuit Courts and County Courts of the same counties in Virginia, prior to and at the formation of this State. Special Commissioners appointed by a Court to make sale of property under a decree, are not public officers, and it was not necessary that they should be re-appointed after the formation of this State before they were authorized to proceed to execute a decree in force at the formation of this State. I have no knowledge of its having been done in any instance. The Commissioners have been, and still are subject to the control and direction of the Circuit Court of Greenbrier county, in the cause in which they were appointed commissioners. By its order or decree in the cause, the Court can remove them or restrict their powers or do whatever is necessary and proper for the purposes of the suit. It is not essential that a deed should be made or filed as an escrow before the Commissioners can collect the bond. Courts of Equity under whose decrees lands are sold by their Commissioners, direct who shall make deeds, and when they shall be made. Ordinarily, deeds in such cases are not made, and frequently not directed to be made until the purchase money is paid. And when the purchase money is paid the Courts will always on the application of the purchaser direct proper deeds to be made. Counsel in argument referred to what purports to be printed rules

of the Circuit Court of Greenbrier county. They are not properly certified to be evidence, and no part of them is made part of the record, and it is not proper for the Court to consider them for any purpose. It is further argued that the injunction should not have been dissolved until process was served on all the Defendants. I cannot agree with the counsel in this proposition. The Defendants to a bill of injunction may appear to it without being served, and move to dissolve. A suit is "pending" for many purposes before process is served. The act authorizing motions to dissolve injunctions is as follows, "The Judge of a Circuit Court in which a case is pending wherein an injunction is awarded, may, &c." For the foregoing reasons the order of the Judge of the Circuit Court of Greenbrier county, made in this cause on the 15th day of July, 1871, together with the order of the Circuit Court of that county, made in the cause on the 19th day of December, 1871, must be affirmed with costs to the Appellees in this Court and damages according to law, and the cause must be remanded to the Circuit Court of Greenbrier county for further proceedings in accordance with this opinion.

Judges PAULL and MOORE concur in the foregoing opinion.