McFarland, J., De Haven, J., Sharpstein, J.

---

[No. 14693.  Department One. — September 15, 1892.]

T. J. McCORD, Appellant, v. THE CALIFORNIA NATIONAL BANK OF SAN DIEGO, Respondent.

Banks — Duty to Honor Check of Depositor — Illegal Wager — Betting upon Election — Payment of Certified Check — Action by Depositor. — A banker is bound to honor his depositor's orders so long as he has sufficient funds in his hands; and where the depositor has drawn a check upon the bank in favor of another party, with whom he has made a wager on the result of an election, and the check has been deposited with a stake-holder, certified by the bank, and paid after the loss of the wager, the fact that the banker knew that the check or money was intended to be used for an illegal purpose will not enable the depositor to recover from the bank the amount of the check, after it has been paid or certified by the bank, without a notice from the customer stopping payment.

Id. — Disobedience to Orders of Customer — Promotion of Unlawful Purpose — Knowledge of Banker Immaterial. — A banker cannot excuse his disobedience of his customer's orders, in the due course of business, by setting up that he knew or had reason to believe that the customer's orders were given in promotion of an unlawful purpose.

Appeal from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion.

*William Darby,* and *Hunsaker, Britt & Goodrich,* for Appellant.

The check relied upon by defendant as authority for paying out plaintiff's money, drawn by the plaintiff upon the defendant, payable to the order of McRae, was an "election-bet check," placed in the hands of Hickman

as stake-holder. This check was illegal and void, and neither McRae nor Hickman could assert any rights thereunder as against the drawer. (Pen. Code, sec. 60; Civ. Code, sec. 1667; *Johnston* v. *Russell*, 37 Cal. 670; *Gridley* v. *Dorn*, 57 Cal. 78; 40 Am. Rep. 110; *Ladda* v. *Hawley*, 57 Cal. 51; *Swanger* v. *Mayberry*, 59 Cal. 91; *Franklin* v. *Stoddard*, 34 Minn. 247; 8 Am. & Eng. Ency. of Law, 996.) The bank could justify the payment of the check only by showing that at the time it was paid it had no notice of the illegality; and the illegality having been shown by the plaintiff, the burden of proving payment in good faith shifted to the bank. (*Fuller* v. *Hutchins*, 10 Cal. 523; 70 Am. Dec. 746; *Graham* v. *Larimer*, 83 Cal. 173; *Shain* v. *Goodwin*, 46 Fed. Rep. 564; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; 16 Am. St. Rep. 836; *National Bank* v. *Diefendorf*, 123 N. Y. 191; *Henry* v. *Sneed*, 99 Mo. 407; 17 Am. St. Rep. 580; 1 Daniel on Negotiable Instruments, 4th ed., secs. 799, 815; 2 Randolph on Commercial Paper, secs. 1026, 1027.) To entitle the bank to interpose the defense of a *bona fide* payment, it was incumbent on it to show its payment in good faith, and without notice of its illegal character, prior to and down to the time of its payment. (1 Daniel on Negotiable Instruments, 4th ed., sec. 789 a. See *Eversdon* v. *Mayhew*, 65 Cal. 167.) It is not necessary that the purchaser of negotiable paper should have formal notice of existing defenses. Knowledge, however acquired, is equivalent to notice. (2 Randolph on Commercial Paper, sec. 1002; 1 Daniel on Negotiable Instruments, 4th ed., secs. 789, 799. See also *Henry* v. *Sneed*, 99 Mo. 407; 17 Am. St. Rep. 580; *Lawton* v. *Gordon*, 37 Cal. 202, 205; *Butcher* v. *Yocum*, 61 Pa. St. 168; 100 Am. Dec. 625; *Curtin* v. *Portland*, 4 Or. 340, 350.)

*M. T. Allen, Conklin & Hughes,* and *H. E. Doolittle,* for Respondent.

Appellant having on deposit with respondent sufficient money to cover the check, respondent was bound to honor his check against it, and could not refuse to pay

the check on the ground that the proceeds were intended to be improperly used. (*Armstrong* v. *American Exchange Nat. Bank*, 133 U. S. 433.) The certification by the bank operated as a payment of the debt for which the check was drawn, and rendered the bank liable on the check, whether the drawer had sufficient funds or not. (*Cooke* v. *State Nat. Bank*, 52 N. Y. 96; 11 Am. Rep. 667; *First Nat. Bank of Jersey City* v. *Leach*, 52 N. Y. 350; 11 Am. Rep. 708; *Smith* v. *Miller*, 43 N. Y. 171; 3 Am. Rep. 690.) The check was properly certified by the teller, he having authority in that behalf. (*Farmers' Bank* v. *Butchers' Bank*, 14 N. Y. 624; 16 N. Y. 133; 69 Am. Dec. 678; *Meads* v. *Merchants' Bank*, 25 N. Y. 146; 82 Am. Dec. 331.)

TEMPLE, C.— This is an appeal from the judgment, and from an order refusing a new trial.

The action is by a bank depositor; and the question is, whether the bank rightfully paid a certain check for one thousand dollars.

The case was tried without a jury. At the trial there was a material and substantial conflict between the testimony of the bank teller and the testimony of the plaintiff, who was corroborated by another witness. The findings support the testimony of the teller, whose statement, therefore, we are forced to adopt.

On the 4th of November, 1890, the plaintiff made a bet upon the result of an election. What the election was does not appear, but it seems to be conceded that the wager was forbidden by our codes. The wager was at night, and a check for one thousand dollars upon defendant was drawn in favor of J. A. McRae, — the other party to the wager, — and placed in the hands of one Hickman, as stake-holder.

The next morning, one Frederick, who was authorized by plaintiff to notify the bank not to pay the check, met the paying-teller in the street, and told him about the bet and the drawing of the check, and advised him not to pay the check, saying that he had no interest in the

matter except as the friend of McCord, and would not like to see the boy lose his money. The teller testified that "he did not at any time demand that I should not pay the check, and conveyed the impression to me that he was acting on his own responsibility." That same day Hickman presented the check for payment, but the teller refused to pay it. Later in the day Hickman and McRae called together for the same purpose, but payment was again refused. The refusal was because of what Frederick had said, and to give plaintiff a chance to stop the payment. On the morning of the 6th, Hickman again presented the check and asked that it be certified. Not having heard from plaintiff, and thinking he had declined to pay as long as he would be justified in doing, the teller consented.

Of course the bank then became the principal debtor, and the check was then virtually paid. The teller at the time drew a memorandum check against plaintiff's account, as his custom was in such cases.

On the 12th the check was paid, and the amount carried to the account of Hickman, and on the same day, after such payment, plaintiff drew his check for the amount and presented it in person. Payment was refused on the ground that plaintiff had no balance to his credit at the bank.

If the facts had been found according to the contention of plaintiff, and as testified to by his witnesses, he would have had a good case. That theory was, that he had countermanded the payment of the check. But as the court found for the defendant on that issue, the question is simply whether the fact that the defendant knew that the money was intended to be used for an illegal purpose will enable the plaintiff to recover. A case can be imagined in which to pay a check might be to aid and abet a crime, but even then it is difficult to see how a guilty principal can sue the depositary for obeying his orders.

But independently of that consideration, it would not do to permit a banker to decline payment on the ground

that bad use is to be made of the money.   His under-
taking is to honor his customer's orders so long as he
has sufficient funds in his hands; subject to certain limi-
tations for the protection of the banker against spurious
orders, the funds are intended and understood to be as
much under the control of the depositor as though they
were in his own safe.

Morse on Banks and Banking, section 311, lays down
the law upon this subject as follows: " The banker cannot
excuse his disobedience of his customer's orders, in the
due course of business, by setting up that he knew or
had reason to believe that the customer's orders were
given in promotion of an unlawful purpose."

The banker in paying a check is not, as appellant seems
to contend, in the position of one who purchases negoti-
able paper.   He is a custodian of funds, and payment of
a check of his customer is payment to his customer, who
is in no position to complain.   And besides, public pol-
icy would not permit a banker to shirk his duty under
such defenses.

So obvious is this, that the books contain no cases
where the question is raised, except where the deposit
is of trust funds or by an agent.

Under these views, it is obvious that the alleged errors
of law were not errors, or were harmless.

I advise that the judgment and order be affirmed.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the
judgment and order appealed from are affirmed.

HARRISON, J., PATERSON, J., GAROUTTE, J.