# CHARLESTON.

JAMES C. BRINEGAR v. BANK OF WYOMING, a Corporation

(No. 5390)

Submitted September 29, 1925. Decided October 6, 1925.

1. JUDGMENT—*Necessary Averments and· Proof by Judgment Debtor to Enjoin Collection of Judgment Stated.*

   In order to enjoin the collection of a judgment, the judgment debtor must aver and prove that he had a just defense to the action, and was prevented from interposing that defense, by fraud, mistake, accident, or some adventitious circumstance beyond his control, and that he was guilty of no laches or negligence on his part. (p. 67.)

2. SAME—*Failure of Debtor to Appear and Assert Defense in Response to Summons, Because Person Serving Process Told Him it Was Subpoena to Appear as Witness, Held Not Sufficient to Set Aside Judgment Against Him;*

*Normal Person, Served With Legal Process, Has Duty to Ascertain Its Import From Process.*

Failure of a debtor to appear and assert his just defense in response to the summons served on him, because the person serving the process told him it was a subpoena to appear as a witness, is not sufficient ground for setting aside the judgment rendered against him, as procured by fraud, accident or mistake. It is the duty of a normal person served with legal process to ascertain its import from the ·process delivered to him.   (p. 67.)

3.  JUSTICE OF THE PEACE—*Party Discovering Rendition of Judgment Against Him by Justice of the Peace Within 90 Days Therefrom Has Adequate Remedy at Law, and Failure to Pursue Such Remedy Does Not Warrant Injunction Against Enforcing Judgment.*

Where judgment by a justice of the peace has ·been rendered on a claim to which the defendant has a meritorious defense, and he has been prevented from interposing it by fraud, accident, mistake or some adventitious circumstance beyond his control; and he discovers the fact of rendition of the judgment within ninety days of its rendition, he has a plain, adequate and complete remedy at law by appeal upon proper application to the circuit court. Failure to pursue that remedy will not warrant equitable relief by injunction against the judgment.   (p. 68.)

Appeal from Circuit Court, Wyoming County.

Suit for injunction by James C. Brinegar against the Bank of Wyoming. Judgment for plaintiff, and defendant appeals.

*Decree reversed; bill dismissed.*

*J. Albert Toler,* for appellant.
*E. W. Worrell,* for appellee.

LIVELY, PRESIDENT:

The bill is to enjoin the defendant below, Bank of Wyoming, appellant here, from enforcing a judgment in its favor against plaintiff below, Jas. C. Brinegar, for the sum of $135.00, rendered by a justice of the peace, September 1, 1923, and to recover the sum of $42.50 collected by the bank on that judgment; on the ground that the person who served the summons on Brinegar told him that it (the summons)

was for the purpose of requiring his presence as a witness in the trial, and not as a defendant, and that he relied upon that person's statement as true; and on the ground that plaintiff Brinegar had a just defense to the claim upon which the judgment was rendered. The bank by answer denied that the officer had in any way misled plaintiff as to the purport of the summons, and denied that there was a just defense to the action at law; and also demurred to the bill. The demurrer was overruled, and the parties went to proof. The decree granted the relief prayed for; the judgment at law was annulled, and the bank was restrained from further proceeding to collect it, and a recovery was had against the bank for repayment to plaintiff of the $42.50 theretofore collected on the judgment, with interest, and costs. This appeal followed.

The source of the litigation was a game of poker participated in by Brinegar and Greeley Jackson and perhaps others, on the evening of August 19, 1923. Greeley was the "banker" in the poker game, and when it was over Brinegar owed him $135.00 for poker chips purchased and lost in the game. Brinegar gave Jackson his check for that amount on the Bank of Wyoming, with the notation on it "for cash". The next morning as the bank was opened, Brinegar appeared and drew out all of his money on deposit, saying nothing about his outstanding check to Jackson. A little later Fred N. Stewart presented the $135.00 check payable to Jackson, and it was paid by a teller or assistant cashier, who was unaware that Brinegar had, a few minutes before, withdrawn all his deposit, the formal entries not then having been made. Later in the day the overdraft was discovered and an attempt was made to induce Stewart and Jackson to refund the money, (Stewart had paid the money on the check to Jackson). They refused. Brinegar had left the town. Later the bank instituted suit before Justice Toler on the check, against Brinegar, Jackson and Stewart. Process was served on Brinegar by deputy sheriff Belcher. He made no appearance, and judgment was rendered against him on the 1st of September, 1923, the case being dismissed as to Jackson and Stewart. Execution was issued and by suggestion duly served Brine-

gar's wages in the hands of the Itmann Colliery Company, amounting to $42.50, were applied on the execution. His wages were due at intervals of two weeks. He discovered that judgment had been rendered, when on a pay day in September, 1923, he called for his wages and found they were withheld under the suggestion. He then looked at the summons which had been served on him by Belcher, the deputy sheriff, and found out that he had been summoned as a defendant. He consulted a lawyer who told him that more than ten days had elapsed, preventing an appeal. At May rules, 1924, he filed this injunction bill.

Brinegar's grounds for cancelling the judgment are twofold: First, that he was prevented from making defense because Belcher, who served the summons, misled him as to the contents of the summons, which he did not read, being without his glasses, and which he then put in his pocket; and next, that he had a good defense to the action, because the check was given for a gambling debt, was illegal and void, and the bank paid it at its peril.

Even if Brinegar's alleged defense at the trial was a meritorious one, and would have impelled a different judgment, if interposed, that fact alone will not relieve him of the judgment. There must be some accident, fraud, mistake or some adventitious circumstance beyond his control, which prevented him from asserting his defense at law. "The principle is founded in wisdom and sound policy and springs from the positive necessity of prescribing some period at which litigation must cease. Injustice alone does not entitle a party to relief, but he must show himself free from laches, and that he has done everything that could reasonably be required of him. If the court of equity should relieve persons from the consequences of their own neglect, it would directly encourage such conduct. Diligence and vigilance would cease to be the rule, and all certainty in judicial proceedings would be destroyed". Vol. 8 Ency. Dig. Va. & W. Va. Repts. page 537; *Meem* v. *Rucker,* 10 Grat. 509. No principle is more firmly settled. The circumstance here relied upon is that Belcher misled plaintiff as to the substance of the paper served on him. The burden is upon plaintiff to establish that

fact, even if when established it would be sufficient excuse to relieve him from laches. And we find that the fact is denied. Brinegar says that Belcher served the paper on him, and being without his glasses, "I took it back to him and asked him to explain it to me, that I could not read it without my glasses, and he said the bank had sued Greeley Jackson and Mr. Fred Stewart and wanted me for a witness, and I just didn't pay much attention to it". He kept the summons in his pocket and read it after he had found that his money had been "tied up". Belcher, who was a deputy sheriff, served the process and he says he never said anything to Brinegar about its contents then or afterwards. It appears that he handed the summons to Ballard Belcher, who, acting for him, delivered it to defendant while the deputy was standing near and saw it delivered. It does not appear that Ballard Belcher was an officer. He was not a witness. Brinegar cannot excuse himself by relying upon what Ballard Belcher told him, if he told him anything. It was his duty to see what was the purport of the legal paper served upon him. The interpretation of some individual not an officer, was no better than his own, and he was the one most vitally concerned. Thinking it was a subpoena as a witness he paid no attention to it. He was not concerned with the date when he was required to appear, nor with the reasons why he was summoned as a witness. His glasses were not permanently lost. He had little regard for the court's process, although he knew what the litigation was about. He had been previously arrested for giving the check, under the "bad check law", at the instance of Jackson. The burden was on him to show that he was misled, and that he was diligent. He has not borne that burden. Moreover, he discovered that judgment had been rendered against him before ninety days expired from its rendition. The judgment was rendered on September 1, and before that month expired he was apprised of the judgment when he went to draw his wages. Under section 174, chapter 50 of the Code, he could have appealed by application to the Circuit Court by giving bond and showing by his own oath, or otherwise, good cause for his not having taken such appeal within ten days from the date of the judg-

ment. If the "good cause" was sufficient to set aside the judgment on account of fraud, accident, mistake or the like, it was good cause for an appeal under the ninety-day provision above referred to. *Powell* v. *Miller,* 41 W. Va. 371.

Injunction is an extraordinary remedy and will not be granted when there is a plain, adequate and complete remedy at law available. 7 Ency. Digest Va. & W. Va. Repts. 521. Having a plain, adequate and complete remedy by appeal, Brinegar cannot be permitted to await the expiration of that remedy and then enjoin the collection of the judgment. His laches cannot inure to his benefit. *Warehouse* v. *Pridemore,* 55 W. Va. 451, 465.

If the judgment cannot be set aside because Brinegar had a plain, adequate and complete remedy at law of which he failed to avail himself until too late, or upon the ground that he has been guilty of laches, negligence and indifference in the assertion of his defense at law, it is of little consequence whether his defense was meritorious or otherwise. As was said in *Allen* v. *Hamilton,* 9 Grat. 357, "The numerous decisions of this court . . . have established the rule that a party having a good legal defense, shall not, after a judgment at law, bring the case into equity upon the legal matter, without alleging and proving a good excuse for not using it at law; and moreover, that a court of equity will not grant relief merely because injustice has been done." See *Shields* v. *McClung,* 6 W. Va. 79.

But on the merits of the defense, even if it had been interposed, and on which the lower court evidently based its decree after having set aside and annulled the judgment, it may not be out of place to say that ordinarily a bank cannot refuse payment of its customer's check on the ground that it was given in a gambling transaction, and the amount paid on such check cannot be recovered in an action against the bank where there was no notice to the bank. *Snyder* v. *Bank,* 221 Pa. 599, 70 Atl. 876; *Northern Bank* v. *Arnold,* 187 Pa. 356, 40 Atl. 794; *McCord* v. *Cal. Nat. Bank,* 96 Cal. 197, 31 Pac. 51. It is not contended here that the bank had any notice that the check drawn on it by Brinegar originated in

a gambling transaction. The notation on the check was "for cash".

Brinegar's counsel relies upon *Bank* v. *Jacobs,* 74 W. Va. 525, to sustain the proposition that a check given for money lost or to be used in gambling is void in the hands of an innocent holder in due course and for value. The bank in the case at bar did not purchase the check. The check was an order of its customer to pay the amount; and even if it did not have sufficient funds of the customer in its hands, the overdraft to pay the check would justify it in recovering against its customer on the implied contract that he would repay. It was money expended for his benefit on his order and without knowledge of the purpose for which the order was given.

The decree of March 27, 1925, is reversed and plaintiff's bill dismissed.

*Decree reversed; bill dismissed.*