## Charleston.

### DAVIS *v.* LANDCRAFT *et al.*

Decided May 2, 1877.

1877.
January Term.

1. A bill to set aside a decree for fraud, must state the decree and the proceedings which led to it, with the circumstances of fraud, or whatever the ground may be on which it is im-peached.

2. A case in which a court of equity cannot consider whether decrees of a court of equity rendered in another cause were procured by fraud. See opinion of Court.

3. Where land is sold, under a decree of court having jurisdiction of the subject, to pay a deed of trust debt, and a judgment debt, which are liens on the land in full force, the deed of trust and judgment as liens, also, the decree of sale made in the cause, being prior in date to the judgment of D., which was obtained after such decree of sale, and also, docketed on the proper judgment lien docket before a sale was made by the special commissioner appointed to make said sale in the decree of sale, a sale made after the recovery and docketing of the judgment of D. by said special commissioner, and the deed made to the purchaser at such sale, for the land purchased, by such special commissioner appointed in and by the decree of the court confirming such sale, is valid, and passes the title to the purchaser as against the judgment of D. and any lien thereof, although such sale, the decree of the court confirming the same, and such deed of such special commissioner to the purchaser for the land, were made subsequent to the recovery and docketing of said judgment of D., unless something is alleged and shown in proper form and manner against said sale, decree and deed, other than the mere fact that the sale, decree of confirmation thereof, and such deed were made subsequent to the recovery and docketing of the judgment of D.

Appeal from, and *supersedeas* to, a decree of the circuit court of Summers county, rendered on the 15th day

of September, 1876, in a cause in chancery then in said court pending, in which James W. Davis, was plaintiff, and G. C. Landcraft, Joseph N. Haynes and James L. Shanklin, were defendants.

Appeal and *supersedeas* granted, upon the petition of said Plaintiff, James W. Davis.

The Hon. Homer A. Holt, Judge of the eighth judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, who delivered the opinion of the Court, states the case fully.

*J. W. Davis*, for appellant, cited the following authorities:

*Withers v. Carter*, 4 Gratt., 407; *McLure v. Thistle*, 2 Gratt., 182; Code W. Va., ch. 74, §4, 5.

*James L. Laidley*, for appellant, cited the following authorities:

Story Eq. Jur., 1265; Bump., 564, and cases there cited.

*W. Adams* and *F. W. Mahood*, for appellees. Mr. Adams filed a brief, in which the following authorities are cited:

2 Kent Com., 441-2; 7 Gratt., 340; 4 McCord, 294; 12 Pa., 109; 2 Ohio, 373; 19 Pick., 231; *Evans et ux. v. Spurgin*, 6 Gratt., 107.

HAYMOND, JUDGE, delivered the opinion of the Court:

In June, 1874, the plaintiff commenced his suit in equity, against Grandison C. Landcraft, and Joseph N. Haynes, and James L. Shanklin, in the circuit court of the county of Summers. On the first Monday in August thereafter, the plaintiff filed his bill in said suit against said defendants, in which he alleges, substantially, that at the September term, 1871, of said court,

1877.
January Term.

Davis
v.
Landcraft et al.

he recovered a judgment against the defendant, Land-craft, for $89.70, with interest thereon from the 26th day of September, 1871, until paid, and $11.12, his costs of suit. That said judgment was duly docketed in the judgment lien docket of Summers county. He filed with his bill an official copy of said judgment as so docketed. He also alleges that his said judgment is in full force, and has not been paid, in whole or in part; that he has a lien on the lands of his judgment debtor, lying in the county of Summers, on New river, on the north side thereof, at and about the place called "Landcraft's ferry;" that these lands are valuable, and in part claimed in some way by the defendant, Haynes, who resides on said land with the defendant, Landcraft; that all these lands on which said Haynes and Landcraft reside, are subject to the lien of his said judgment. He further alleges that one James L. Shanklin has a judgment against said Landcraft, and that Shanklin's said judgment is subsequent to that of plaintiff, and is not entitled to satisfaction until his is satisfied. And he prays that said lands be subjected to sale to satisfy his lien, and that he may be granted such relief as to equity belongs, the facts of his case considered.

It appears that plaintiff's judgment was recovered on the 26th of September, 1871, and that it was docketed October 2, 1871. It also appears that Shanklin's judgment was recovered on the 23d day of September, 1871, and docketed 2d October, 1871. Both judgments were recovered in the said circuit court of Summers county, and manifestly at the same term of the court. On the 13th day of April, 1875, the defendants, Haynes and Landcraft, filed their separate answers to this bill, and the plaintiff filed a reply in writing, to the answer of said Haynes, and it being suggested by Landcraft that he was a bankrupt, and ———— is his assignee in bankruptcy, the plaintiff, by leave of the court, filed his amended bill against said assignee, and process was ordered thereon, as the decree of the court then made declares. Landcraft, in

his said answer, avers that on the 17th day of September, 1874, he was adjudged a bankrupt upon his own petition in the district court of the United States, for the district of West Virginia, and he files therewith a certificate of James H. Nash, registrar in bankruptcy, district of West Virginia, to that effect. By this certificate it appears that said Landcraft filed his petition in bankruptcy in said last named court, on the 9th day of September, 1874. Landcraft further says in his answer, that no discharge under the act of Congress, entitled, "An act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1869, has been granted, but that proceedings to obtain said discharge are still pending in said district court. He further avers that the land mentioned in plaintiff's bill is not his property, but is the property of said Haynes, to whom it was sold by him (Landcraft) before the judgment of plaintiff was recovered, and that it was also sold to said Haynes by commissioner J. W. Harris, under a decree of the circuit court of Summers county. And he further avers that the plaintiff had notice of his sale to Haynes, and he denies all imputations of fraud in plaintiff's bill. The defendant, Haynes, in his said answer to plaintiff's bill, demurs to the bill, and says it is insufficient in law. And further answering, says he is the owner of about one hundred and forty-five acres of the land referred to in the bill of complainant, by virtue of a purchase from the said Landcraft, made on the 12th day of March, 1870; that a title bond was then executed by said Landcraft to respondent, for said one hundred and forty-five acres of land, which he proposes to file with his answer, as Exhibit A. He further avers that he at once took possession of said land, and since that time has improved its value greatly by labor and improvements, which enhanced the value of the land $1,000.00; that the plaintiff knew of this sale; that he was Landcraft's attorney, and advised him to sell said land; that almost immediately after the sale Landcraft informed plaintiff of the sale,

and plaintiff replied, that it was the best thing that could be done. He further avers that by virtue of a decree rendered in June, 1871, by the circuit court of the county of Monroe, West Virginia, at its then term (in which county the whole of the land in question then lay, though it is now in the county of Summers, which has since been formed), in the chancery suit of J. H. Gardner *et al. vs.* G. C. Landcraft *et al.*, the entire tract of land sought to be subjected to the payment of plaintiff's, judgment in this suit, including the one hundred and forty-five acres aforesaid, was sold by special commissioner J. W. Harris, to him (Haynes) for $——; that all the purchase money has been paid to said commissioner by him (Haynes), and the sale was confirmed by the circuit court of Monroe, at its spring term, 1873; that said decree having been rendered before plaintiff obtained his judgment, he (Haynes) is the *bona fide* owner of all said land, free from any lien under· plaintiff's judgment, Haynes filed with his answer official copies of the bill, decree of sale, and decree confirming the report of sale of said lands in the said case of *James H. Gardner et al. v. Grandison Landcraft et al.* The bill filed in the last named cause, is as follows :

"To the Hon. Joseph M. McWhorter,

"*Judge of the Circuit Court of Monroe County :*

" The bill of complaint of your orators, James H. Gardner and Ambrose Carlton, survivors of themselves and William H. Hubbard, late merchants and partners in trade, under the firm name of Gardner, Carlton & Co., respectfully represents that on the 21st day of May, 1869, the said Gardner, Carlton & Co., recovered judgment in the circuit court of Monroe county, against G. C. Landcraft, *alias* Grandison C. Landcraft, for the sum of $476.78, with interest thereon from the 30th day of November, 1859, until paid, and $——, costs of suit, as appears from a transcript from the records of said court, herewith filed marked A, and prayed to be taken as part

of this bill; that execution on said judgment was at the time stayed by the court until its further orders, as likewise appears from said transcript, under the provisions, as your orators allege, of an act of the Legislature of West Virginia, passed February 27, 1867, entitled 'an act staying the collection of certain debts;' that your orators caused said judgment to be docketed on the judgment lien docket in the recorder's office of said county, on the —— day of ———, 187–, pursuant to law, as will appear by a transcript from the same marked B, and herewith filed as part of this bill; that on the —— day of ———, 18—, the act aforesaid having been in the meanwhile repealed by the Legislature aforesaid, the order staying execution on said judgment was revoked and set aside, and an execution awarded thereon, which execution went into the hands of the proper officer, and was by him returned wholly unsatisfied; copies of said order and of the said execution, with the return thereon, are herewith filed marked respectively C. and D., and prayed to be taken and read as part of this bill.

"Your orators further represent that at the time of the rendition and docketing of said judgment as aforesaid, the said Grandison C. Landcraft was the beneficial owner of valuable real estate lying in the county of Monroe, upon which their said judgment is a lien, and which they are entitled to have subjected to sale in satisfaction of the same; that the said real estate consists of two tracts of land, the one containing about one hundred and forty-nine acres, known as the "Pack's Ferry Place," and the other adjoining the first, containing about two hundred and seventy acres, and known as the "Boardman land;" that these lands were on the 7th day of September, 1858, conveyed in trust to secure Jas. H. Alexander the sum of $1,400.00, due by note of said date, which will appear by copy of the deed herewith filed marked F, and prayed to be taken as a part of this bill; that the whole or greater part of this debt thus secured has been paid, as your orators are informed, by Joseph

N. Haynes, the son-in-law of said Landcraft, but whether as the mere agent of said Landcraft or with funds loaned by the said Landcraft for that purpose, or whether he has purchased said note with his own funds and taken an assignment of the same, your orators do not know, but as to which, with all matters touching the same, they pray for a full discovery.

"Your orators are informed, moreover, that since the lien of their judgment attached to said lands, the said Haynes has purchased, or professes to have purchased, a part or the whole of the same; but they allege that no deed for the same has ever been entered of record, and that if any such sale has ever been made, it is fraudulent and void as to them. They moreover allege that even if the said Haynes is the assignee of the said note aforesaid, and entitled to subrogation to the rights of the trust creditor, the lands are amply sufficient to satisfy the trust debt and your orators' judgment also. The said William H. Hubbard has departed this life since the rendition of the judgment aforesaid, and the right to enforce the same survives to your orators. The said James H. Alexander has also departed this life, and Allen T. Caperton has qualified as his administrator.

"In tender consideration of the premises, and forasmuch as your orators are remediless save in a court of equity, they pray that the said Grandison C. Landcraft, George W. Hutchinson, Joseph N. Haynes and Allen T. Caperton, administrator of James H. Alexander, deceased, may be made parties defendant to this bill, and required to answer the same fully; that the lands aforesaid, or so much thereof as may be necessary, may be sold in satisfaction of your orators' judgment, interest and costs aforesaid, and the costs of this suit, and that they may have all such other, further and complete relief as comports with equity and good conscience, and is applicable to their case. May the state's *spa.* issue, and as in duty bound they will ever pray," &c.

It appears that at a circuit court held for the county

of Monroe, on the 22d day of June, 1871, that court rendered, in the said cause of James H. Gardner *et al. v.* Grandison C. Landcraft *et al.*, a decree as follows, viz.:

" This cause came on to be heard this 22d day of June, 1871, on the bill, the answer of all the defendants, with general replications thereto, and the exhibits filed, and was argued by counsel. Upon consideration whereof, and it appearing to the court that the defendant, Joseph N. Haynes, has paid off and discharged the residue of the bonds executed by the defendant, Landcraft, to the late James H. Alexander, after deducting the amount previously paid by the said Landcraft; and that he has taken an assignment of said bond, and is entitled to be subrogated to all the rights of the creditor, including the priority of lien secured by the trust deed in the bill mentioned.

" And it further appearing to the court that the sum thus paid by the said Haynes amounts, as of this date, to the sum of $1,392.05, it is therefore, adjudged, ordered and decreed, that the said Joseph N. Haynes recover of the said Grandison C. Landcraft, the sum of $1,392.05, with interest from this date until paid. And it also appearing to the court that the said Landcraft is justly indebted to the plaintiffs, James H. Gardner and Ambrose Carlton, survivors of themselves and William H. Hubbard, late partners in trade under the firm name of Gardner, Carlton & Co., in the sum of $476.78, with interest thereon from the 30th day of November, 1859, and $11.56, for which judgment was recovered against him in the circuit court of Monroe county, on the 21st day of May, 1869, which said judgment is a lien upon the land in the bill and proceedings mentioned, which it is the duty of this court to enforce, it is also adjudged, ordered and decreed that the said plaintiffs recover of the said Landcraft the sum of $807.49, (the amount of said judgment as of this date,) with interest thereon from this date until paid, and $11.56 costs, and the cost of this suit. And it is further adjudged, ordered and decreed, that if

the said sums of money aforesaid be not paid to the parties entitled thereto, within thirty days from this date, that John W. Harris, who is hereby appointed a special commissioner for the purpose, shall proceed to sell at public auction on the premises, to the highest bidder, so much of the lands in the bill and proceedings mentioned as may be necessary to satisfy this decree, on the following terms: cash as to so much as may be necessary to defray the costs of suit and expenses of sale, and pay off and discharge the debt due to the defendant, Haynes, which shall be paid over to the parties entitled thereto ; and as to the residue on a credit of six, twelve and eighteen months, taking from the purchaser bond, with approved personal security, for the deferred installments, and retaining a lien upon the land as further security; the said commissioner shall retain the bonds thus taken, collect the same as they may respectively fall due, and out of the proceeds thereof pay over to the plaintiffs the amount of their debt, interest and costs as aforesaid, and the residue, if any, to the said Landcraft ; but it is further adjudged, ordered and decreed, that before making the sale, the said commissioner shall advertise time, place and terms thereof, for four successive weeks, in the Monroe county *Register*, a newspaper published in the county of Monroe, and post notice thereof, for the same time, at the front door of the court house of said county, and before receiving any money under this decree, execute and file with the clerk of this court bond, with good personal security, to be approved by him, in the penalty of $5,000.00, and conditioned according to law."

It also appears that at a circuit court held in and for the said county of Monroe, on the 14th day of May, 1873, another decree was rendered in said last named cause, by said court, as follows, viz :

" This cause came on to be again heard this 14th day of May, 1873, upon the papers formerly read, the transcript of the decree therein rendered by the Court of Appeals, and the report of special commissioner John

W. Harris, appointed to make sale of the lands in the bill and proceedings mentioned, to which report there are no exceptions, and was argued by counsel. Upon consideration whereof, and it appearing to the court that said commissioner has, by consent of all the parties in interest, which consent is shown by papers A and B filed with the report of said commissioner, the execution of which by the defendants, G. C. Landcraft and J. N. Haynes, respectively, was duly proved in open court, made private sale of said lands instead of selling at public auction as directed by a previous decree in this cause, the defendant, Joseph N. Haynes, becoming the purchaser of said lands at the sum of $2,610.14, of which he paid in cash $161.69, the costs of suit and expenses of sale, and for a part of the residue, viz: the sum of $898.57, the amount due the plaintiffs, has executed his three bonds of $299.52⅓, with G. W. Haynes as his surety, payable respectively in six, twelve and eighteen months after date, of May 13, 1873; and it further appearing to the court that the residue of said purchase money, viz: $1,549,88, is the sum due from the defendant, Landcraft, to the said purchaser, for which a decree heretofore rendered in this cause, which debt has been thus satisfied, it is, therefore, adjudged, ordered and decreed that said report and sale be, and the same are hereby approved and confirmed; that said commissioner retain in his possession the sale bonds aforesaid, collect the same as they may respectively become due, and pay over the proceeds to the plaintiffs in this cause, and that when the said sale bonds shall have been wholly paid, execute and deliver to the said purchaser a deed with special warranty, for said lands, for which said deed shall be entitled to demand and receive of the purchaser a fee of $5.00."

On the — day of June, 1875, E. L. Wood, assignee of said Landcraft, in bankruptcy, filed his answer to the plaintiff's bill in the cause at bar, in which he says he knows nothing personally of the charges in plaintiff's bill, and calls for proof thereof, and prays the protection of

the court. The replication of plaintiff, Davis, to the answer of said Haynes, which is in writing, in fact amounts to a general replication thereto, as it denies all the material statements, averments and allegations therein contained specially, as well as generally.

After all this, and on the 11th day of September, 1876, the plaintiff, Davis, by leave of the court, filed his amended bill, and the cause was remanded to rules for process to issue on the amended bill, and further and proper proceedings thereon. The last named amended bill filed by plaintiff, Davis, is as follows, viz:

"The amended bill of James W. Davis to his original bill, filed in the Summers circuit court against Grandison C. Landcraft, Joseph N. Haynes and others: The plaintiff amends his bill, and charges that the sales made by defendant, Landcraft, to defendant, Joseph N. Haynes, were made of fraud; that those sales were made to hinder, delay and cheat the creditors of the said Landcraft; that the prices to be paid by Haynes were wholly inadequate; that he never paid for those parcels of land; that he, and defendant, Landcraft, have combined to defraud the creditors of Landcraft; that the property purchased by Haynes was the entire estate of Landcraft's, except his, Landcraft's, courtesy in his wife's estate. Plaintiff charges that Landcraft owns a valuable curtesy in the lands on which he resides, and he prays the said curtesy may be sold to pay his lien. He prays for the enforcement of his lien on the lands claimed by defendant, Haynes, and for all proper relief."

On the 19th day of April, 1876, the said Landcraft and Haynes, by leave of the court, filed their separate answers to said amended bill of plaintiff, and, the plaintiff replied thereto generally. Landcraft in his answer to said amended bill, denies that the sale of his land to defendant, Haynes, was made to defraud his creditors; he denies all fraud, or intention to defraud in the transaction; he denies that the price was inadequate. He avers that said Haynes paid a large portion of the purchase

1877.
January Term.

Davis
v.
Landcraft *et al.*

money by paying off the lien of a trust deed on the land, and also in other ways; and says that when the land was sold under decree of Monroe circuit court, Haynes was the purchaser, and is the *bona fide* owner of it. He also denies that he owns any interest whatever in said land, and again asserting that he has been duly adjudged a bankrupt under the laws of the United States, prays to be hence dismissed, &c. Haynes, in his answer to said amended bill, reserving all right of exceptions, demurs to the bill, and says it is not sufficient in law. And further answering, he denies any purpose or knowledge of fraud in the purchase of the land in question, and alleges that the purchase was *bona fide,* free from fraud, and was for a fair equivalent. He also says that a large portion of the purchase money has been paid, and that, in addition, he was forced, for his own protection, to purchase the land again at the sale under the decree of the circuit court of Monroe county, in the said chancery suit of J. H. Gardner & Co. *v.* G. C. Landcraft, and has paid the commissioner the entire purchase money, and since the institution of this suit has obtained from said commissioner a deed for the land in question. He further alleges that the plaintiff knew of the existence and result of said suit of Gardner, and that he was G. C. Landcraft's counsel therein, and knew of said sale by commissioner Harris to him (Haynes), and he prays to be hence dismissed. The title bond filed by defendant, Haynes, with his first answer, is as follows, viz:

" Memorandum of agreement made and entered into this 12th day of March, 1870, between G. C. Landcraft, of the first part, and Joseph N. Haynes, of the second part, all of the county of Monroe, and state of West Virginia, witnesseth:

" That the said G. C. Landcraft has this day sold unto the said Joseph N. Haynes the following real estate, viz: That portion of the land on which the said G. C. Landcraft now lives, lying below the ' Graveyard branch,' being a part of two tracts owned by Bartlett Pack, de-

ceased, and is bounded as follows, viz:    Beginning at the mouth of said branch, and with calls of the old tract of one hundred and forty-nine acres, down New river, and binding thereon, to the lower corner of said tract on the bank of the river, and leaving the one hundred and forty-nine acres, and with the lines of the Boardman land, a short distance to the line of John Pack's heirs, and with the same, leaving the river, to the lines of a tract of fifty acres of Jubal Barton, and with said line on the south side of said mountain to the 'Graveyard branch;' thence leaving Barton's land and with said branch to the beginning—supposed to be about forty or forty-five acres of river bottom, and one hundred acres of mountain land, be the same more or less, situated in the county aforesaid, for which the said Joseph N. Haynes agrees to pay the party of the first part the sum of $3,000.00, in the following manner, viz:    The first payment the said Haynes is to pay off a deed of trust held by the heirs of James Alexander, deceased, on the said G. C. Landcraft, if the above boundary is a part of said deed of trust, including costs, and amounting to $1,500.00 or upwards; the remaining portion of said purchase money in three equal and annual payments, in one, two and three years from this date; for the payment of which, the party of the second part has executed his bonds according to the above statement.    Now, as soon as the party of the second part shall have fully paid off the said deed of trust, including cost and the bond above mentioned, then the party of the first part binds himself to make to the said J. N. Haynes a deed with general warranty.

" Witness my hand and seal, this day above stated.

" G. C. LANDCRAFT.    [Seal.] "

"N. B.—The interest on the above deed of trust and costs is to stop on (G. C. Landcraft) the date of the above title bond."

After Landcraft and Harris filed their first answer in the cause, and before plaintiff filed his said amended

bill, Haynes took and filed the deposition of himself and Landcraft. Landcraft, in his deposition, says that he sold to said Haynes that portion of the land in the bill mentioned, from the "Graveyard branch" down the river to the lower end of his farm; that the line runs straight across the farm to the back line, follows the "Graveyard branch;" that the sale was made the 12th day of March, 1870; that the sale was made to prevent a sale about to be made pursuant to a decree rendered in the case of Caperton, administrator, *v.* Landcraft, in which case said land had been decreed to be sold to satisfy a trust deed; that he sold the land for $3,000.00 to Haynes, and Haynes satisfied said decree, and the balance was to be paid in one, two and three years; that he received a letter from plaintiff (Davis) in the spring of 1870, asking him to meet him at the spring term of Greenbrier circuit court, at Lewisburg; that plaintiff was his counsel in the case mentioned above in the Court of Appeals; that he went to Lewisburg, according to his letter, and he then told him (Davis) of the sale that he had made to Haynes, and he (Davis) said that he (Landcraft) had done right, and that he ought not to suffer his land to be sold by decree, and he (Landcraft) filed two letters from said Davis with his deposition, marked A and B, as a part of his deposition. He, Landcraft, also says that the land has been in the possession of Haynes ever since the day of sale; that he put him in possession then, and he has paid the taxes ever since; that the place was very much out of order when Haynes bought it. He (Haynes) has cleared the brush and fenced the same, which has added to the value of the place between $800.00 and $1,000.00, and the other improvements erected thereon amount to at least $500.00 or $600.00. He also says that the sale to Haynes was *bona fide*; also says, on cross-examination, that he did not make Haynes a deed for the land on the day of sale, but gave him a title bond at the time. Haynes, in his deposition, says he bought the land mentioned by Landcraft, in his deposition, on

the 12th day of March, 1870, and he (Landcraft), executed to him a title bond for the same which is filed with his answer in the cause, marked "A," that he paid $3,000.00, for the land; that there had been a decree of the circuit court of Monroe county, to sell the same land to satisfy a judgment of James R. Gardner and others, against defendant Landcraft, obtained in May, 1869, and John W. Harris was appointed by said decree to make said sale. That this decree bears date June 22, 1871, and is filed with his deposition marked Z. That he went to Lewisburg and proposed to Mr. Harris to give him his bond, with security after first paying the costs of suit to satisfy said decree; that Mr. Harris refused to take his bond, and the land was advertised, and the day of sale came on, and from some cause commissioner Harris did not attend, and no sale was made; and in a few days after he saw Mr. Harris, and bought the land privately from him and said sale was confirmed by said circuit court of Monroe county. All of which appears by a copy of the decree of confirmation of said sale filed, marked X. He further says, that he executed his bonds to said commissioner, and as they became due he paid them off, and he (Harris) by direction of court, made and acknowledged a deed to him which is of record in the clerk's office of Summers county, which deed is filed, marked "T;" that he (Haynes) took possession of that part of the land which he first bought of Landcrat at the time of the sale and he has made improvements upon it to the amount of $1,500.00, and since the sale to him by Harris of the balance, he has had possession of that part not sold to him by Landcraft, and has made improvements on that part; that he is not related to Landcraft, that he married a niece of his wife. The letters from Davis to Landcraft, filed with Landcraft's deposition, are as follows, so far as they relate to any matter claimed to be relevant:

"EXHIBIT A."

"LEWISBURG, March 18, 1870.

" *G. C. Landcraft, Esq. :*

"DEAR SIR :—When I was in Mercer, the Court of Appeals had not adjourned or I would have been at your house ; the last mail but one brought the decision of the Court of Appeals, reversing Judge Harrison's opinion, and remanding the cause for further proceedings, and I suppose Mr. Caperton cannot sell until after the May court. It would be well for you to come to this place on the 12th or 13th of April—that being our circuit court—where we can confer together. Now, I do not know what the decision of the Court is ; as you come by Union you can see what the decision of the Court of Appeals is, and if Mr. Caperton is threatening to sell your land, you had better bring a copy of the opinion and mandate of the Court of Appeals. I do not think we are at the end of our rope by a good deal ; of course, it will be of no use for you to see me before Monroe court. If Mr. Hutchinson does not advertise your land, as I hope he will not until after Court, your yoke of cattle or stock cattle will be very acceptable.

"I am truly yours, &c.,

"J. W. DAVIS."

"EXHIBIT B."

"STATE OF WEST VIRGINIA:

"SUPREME COURT OF APPEALS, }
  "CHARLESTON, January 15, 1873. }

" *G. C. Landcraft, Esq. :*

"DEAR SIR :—To-day I got your letter of the 9th inst., asking me to attend to your case with Gardner, in the Court of Appeals; the case shall have every attention that I can give it.

"I am truly yours,

"J. W. DAVIS."

Plaintiff took and filed his own deposition, in which he is asked this question: "In this case the defendant has given his deposition, and in it has said that you told him, Landcraft, 'that he had done exactly right.' Now tell what did transpire on that occasion?" "Answer— Grandison C. Landcraft told me on that occasion that he had sold his land to defendant, Joseph Haynes, for the purpose of paying all his, Landcraft's, debts, and that Haynes was to pay my debt or fee for attending to his case in the Court of Appeals; it never once occurred to me that Landcraft was selling his land to avoid payment of his debts." This is all he says. By agreement of defendant, Haynes counsel, "It is admitted by the defendants, that defendant, Grandison C. Landcraft, now lives upon and resides in the same house, and on the same farm wherein he has resided for the last twenty years, and that he, said G. C. Landcraft, raised a female child, the niece of the wife of said Landcraft, and that said niece resided with Landcraft until her marriage with the defendant, Haynes, about the year 1870, and that since the marriage, the said Haynes and wife have resided in the same house with Landcraft and wife, and that house is on the land described in the bill and proceedings in this case, and the same sought to be subjected to sale to pay the judgment of the plaintiff. The deed from commissioner John W. Harris, to said Haynes, made in pursuance of the decree confirming the sale made by said Harris to Haynes, is dated the 21st day of April, 1875. And after reciting the decree of sale of the 22d day of June, 1871, and the decree confirming said sale of Harris to Haynes, &c., conveys to said Haynes a tract of one hundred and forty-nine acres of land, known as the "Pack's Ferry Place," and a tract of about two hundred and seventy acres, adjoining the first known as the Boardman land, for a more particular description of which reference is made to a deed from said G. C. Landcraft to George W. Hutchinson, to secure a debt to James H. Alexander, which deed is of record in the county court of

Monroe. This deed is signed and sealed by John W. Harris, special commissioner, and appears to have been acknowledged by him on the 21st day of April, 1875; and was admitted to record in the clerk's office of said county of Monroe, on the same day it was acknowledged. The defendant, Haynes, filed the three bonds given by him, with security, to said commissioner, for part of said purchase money. They are each for $299.52⅓, and are dated the 13th day of May, 1873, and payable in six, twelve and eighteen months, with interest from date. Defendant, Shanklin, filed his answer, claimed the benefit of his judgment in the bill mentioned, insists that it is a lien on said lands, and that it has never been paid in whole or part, and prays that his judgment lien be enforced and that the lands owned by said Landcraft be sold, &c. On the 15th day of September, 1876, the following final decree was entered by the court in the cause:

" This cause came on again this 15th day of September, 1876, to be heard upon the bill and amended bill, together with the separate answers of G. C. Landcraft and Joseph N. Haynes, to the bill and amended bill, and the answer of James S. Shanklin, and exhibits filed, and exceptions thereto, and depositions of witnesses, and exceptions thereto, replications thereto, and the paper marked 2, which was admitted by consent of parties, and was argued by counsel. On consideration whereof, it is adjudged, ordered and decreed that the bill and amended bill of plaintiff be dismissed, and the defendants recover of plaintiff their costs by them about their suit in this behalf expended, including an attorney's fee of $20.00."

From and to this decree the plaintiff, Davis, on petition and assignment of error, during vacation, obtained, from one of the Judges of this Court, an appeal and *supersedeas*, and thus this cause is before this Court for review and consideration.

The first error assigned by the appellant, Davis, is that the court erred in dismissing the bill and amended bill, and in refusing to subject the lands to sale to satisfy the

debt of Davis. It must be observed that the decree of sale made by the circuit court of Monroe county, in the said answer of Gardner *et at. v.* Landcraft *et al.* was made on the 22d day of June, 1871, which was prior to the recovery by Davis and Shanklin, of their respective judgments, and over a year after Haynes purchased the one hundred and forty-nine acres of land from Landcraft. And in this decree of sale the court ascertained that said Haynes had paid off and discharged the residue of the bonds executed by said Landcraft to the late James H. Alexander, after deducting the amount previously paid by the said Landcraft; and that he has taken an assignment of said bond, and is entitled to be subrogated to all the rights of the creditor, including the priority of lien secured by the trust deed in the bill mentioned. The court further, in and by said decree, ascertained that the amount thus paid by said Haynes was $1,392.05, and decreed that said Haynes recover of said Landcraft the said sum of $1,392.05, with interest from the date of the decree until paid. The court also, in same decree, ascertained, that the judgment of James H. Gardner and Ambrose Charlton, survivors of themselves and William H. Hubbard, late partners in trade under the firm name of Gardner, Charlton & Co., for the sum of $476,78, with interest from the 30th day of November, 1859, and $11.56, costs, was unpaid, and constituted a lien on the land in the bill and proceedings mentioned, which it was its duty to enforce, and decreed that said Gardner *et al.* recover against said Landcraft the sum of $807.49 (the amount of said judgment at the date of the decree, including interest), with interest from the date of the decree, until paid, and $11.56 costs and the costs of that suit. And the court, in and by said decree, directed and ordered that if the said sums of money were not paid, that said John W. Harris, who was, by the decree, appointed a special commissioner for the purpose, should sell at public auction, to the highest bidder, so much of the lands in the bill and proceedings mentioned as should

be necessary to satisfy the decree. The terms of sale specified so much cash as may be necessary to pay the costs of the suit and pay off and discharge the debt due said Haynes, to be paid to the parties thereto entitled, and the residue on a credit of six, twelve and eighteen months, taking from the purchaser, bond, with approved personal security, for the deferred installments, and retaining a lien, &c. The said commissioner was further directed to pay out of the proceeds of said bonds the said debt and interest of Gardner and others, and the residue, if any, to the said Landcraft.

1877.<br>January Term.<br><br>Davis<br>v.<br>Landcraft <i>et al.</i>

From this decree, the said Landcraft appealed to this Court, and on the 30th day of January, 1873, and this Court affirmed the same. See *Gardner et al. v. Landcraft et al.*, 6 West Va. R., 36. By the said decree of the 14th day of May, 1873, it appears that said special commissioner Harris made his report of the sale of the lands in the bill and proceedings mentioned in the said cause of *Gardner et al. v. Landcraft*, to which there were no exceptions filed; and by consent of all the parties in interest, which consent was shown by papers A and B, filed with the report of said commissioner, the execution of which by the defendants, Landcraft and J. N. Haynes, respectively, were duly proved in open court, made *private* sale of said lands instead of selling at public auction as directed by the previous decree in the cause, the said Haynes becoming the purchaser of said lands, at the sum of $2,610.14, of which he paid cash, $161.69, the costs of suit and expenses of sale, and for a part the residue, viz.: The sum of $898.57, the amount due Gardner and others, executed his three bonds, with G. W. Haynes as his surety, payable respectively, in six, twelve and eighteen months, from May 13, 1873; and that it appearing to the court, that the residue of said purchase money, viz.: $1,549.88, was the sum due from said Landcraft to said Haynes, for which a decree was therefore rendered in the cause, which debt was thus satisfied, the court approved and confirmed said sale, so made as aforesaid, and directed said com-

missioner, (Harris) to retain in his possession the sale bonds aforesaid, collect the same as they became due, and pay over the proceeds to the said Gardner and others, (the plaintiffs in the cause), and when the said sale bonds were wholly paid, execute and deliver to the said Haynes, the purchaser, a deed, with special warranty, for said lands, &c. The $2,610,14 was just sufficient to pay the costs of said suit, the Haynes' debt, and the debt of Gardner and others, as ascertained and fixed by said decree; so that there was no surplus purchase money to be paid by the commissioner to Landcraft. The deed from special commissioner Harris to said Haynes for said lands made in pursuance of said last named decree was executed, acknowledged and recorded about twenty-three months after the sale by commissioner Harris, and the last installment of purchase money was payable eighteen months after said sale or the date of the purchase money bonds. The said letter of the plaintiff, Davis dated the 18th of March, 1870, to said Landcraft, did not and could not have related to the case of *Gardner et al. v. Landcraft,* but must have related to another case of *Landcraft v. Hutchinson and Cuperton,* which was an injunction case, decided in this court on the 11th of March, 1870. But the letter of the plaintiff to Landcraft, of the 15th day of January, 1873, most probably related to the said case of *Gardner et al. v. Landcraft et al.,* before referred to in 6 West Virginia. Plaintiff's suit at bar, as we have seen, was commenced on the 29th day of June, 1874. From what has preceded, it seems that the lands, which are now in question, and which the plaintiff insists should have been directed to be sold in this case by the court below, under the pleadings, and evidence, had prior to the commencement of this suit been sold, and the sale confirmed, and the entire proceeds of the sale exhausted in paying liens thereon (which according to the ascertainment of that court in said decree of sale then existed) by the solemn adjudications and decrees still in force of a court having

unquestioned jurisdiction of the subject, before the commencement of plaintiff's suit. The decree of sale was made in the case of *Gardner et al. v. Landcraft et al.*, before plaintiff or Shanklin obtained their judgments. The plaintiff does not in his bill, or amended bill, seek to impeach either of the said decrees rendered in the said cause of *Gardner et al. v. Landcraft et al.*, in fact he has for some cause failed to take any notice of said last named cause, or any of the proceedings therein, or in pursuance thereof, whatever, in either of his said bills. The only notice plaintiff has taken in any of his pleadings of said cause and the proceedings had therein, is in his replication in writing, to the first answer filed in the cause by said Haynes, in which he says he " denies that the defendant, Joseph Haynes, ever bought said land under any decree of the circuit court of Monroe county, in any cause. And he denies that said Haynes has any title, legal or equitable, to said land." Story in his work on Equity Pleadings, §428, says : " A bill to set aside a decree for fraud, or upon any of the above grounds, must state the decree and the proceedings which led to it, with the circumstances of fraud, or whatever the ground may be on which it is impeached." Cooper Eq. Plead., 96, 97. *Phillip C. Pendleton v. James Galleway et al.*, Hammond's 9 Ohio R., 178. In Mitford's Pleading, by Jeremy, at page 94, it is said that " a bill to set aside a decree for fraud must state the decree, and the proceedings which led to it, with the circumstances of fraud on which it is impeached. The prayer must necessarily be varied according to the nature of the fraud used, and the extent of its operation in obtaining an improper decision of the court." Story, in his work on Eq. Plead., §257, says : " that every fact essential to the plaintiff's title to maintain the bill, and obtain the relief, must be stated in the bill, otherwise the defect will be fatal. For no facts are properly in issue, unless charged in the bill ; and of course no proofs can be generally offered of facts not in the bill ;

nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence ; for the court pronounces its decree *secundum allagata et probata.*" Cooper's Eq. Plead., p. 5, 7 ; §28 Story's Eq. Plead.

According to the foregoing authority, which seems to be mainly correct, we cannot consider in this case, under the pleadings the question as to whether both, or either, of the decrees aforesaid, rendered in the case of *Gardner et al. v. Landcraft et al.*, were procured by Landcraft and Haynes by fraud, or whether the sale made by said commissioner Harris to Haynes was procured by Landcraft and Haynes corruptly, with intent to defraud or any matter or thing which might avoid said decrees, or either of them, they not being put in issue in the cause, by the plaintiff, by his bills. In this case, as it stands, we are compelled to give the decrees rendered in said case of *Gardner et al. v. Landcraft et al.*, full force and effect. I apprehend that if A, by deed, conveys a tract of land to B, in trust to secure a debt to C, and after the deed is duly recorded, and after its recordation D obtains a judgment against A, and has it duly docketed, and the trustee afterwards sells the property under the deed of trust, to E, and in pursuance of the sale, B, the trustee, conveys the land sold to E, the purchaser, that the deed is valid, against D's judgment, if nothing be alleged against it, except that the sale and deed were made after the date of D's judgment and the docketing thereof. And so where land is sold under a decree of Court to pay a deed of trust debt and judgment debt as in this case, the deed of trust and judgment as liens, also the decree of sale being prior to the judgment of plaintiff, though the sale by the commissioner and the comfirmation thereof, and the deed from the commissioner are made subsequent to the recovery of the judgment of the plaintiff. I infer from the proceedings and decrees in the case of *Gardner et al v. Landcraft et al.*, that Haynes did not claim in that case he had purchased the one hundred and

forty-nine acres from Landcraft or exhibit therein the title bond of Landcraft to him thereof, but that he only claimed that he was the owner as assignee of the debt to secure the payment of which Landcraft made the deed of trust aforesaid to Hutchinson, but I do not determine the fact. A decree, or decrees, of a court cannot be impeached in a court of equity for fraud in a collateral proceeding, if done at all; it must be done in a cause wherein the decree is sought to be impeached by the pleadings directly. In other words, it must be done in a cause where the fraud is put in issue properly by the pleadings. But it is argued here that it appears by the title bond made by Landcraft to Haynes dated the 12th of March, 1870, which is filed by Haynes with his first answer, and which does not appear to have been recorded, that Haynes agreed to pay Landcraft $3,000.00, for the one hundred and forty-nine acres of land, that the first payment thereof Haynes was to make in discharge of the Alexander deed of trust hereinbefore mentioned, including costs amounting to $1,500.00 or upwards, the remaining portion of the purchase money in three equal annual payments in one, two and three years from date of the title bond, for the payment of which Haynes executed his bonds accordingly; that at the bottom of this bond immediately under the signature is this endorsement. "N. B.—The interest on the above deed of trust and costs is to stop on (G. C. Landcraft) the date of the above title bond." That under the circumstances this endorsement must be considered as a part of the title bond, and so considering it, it is manifest that it was the contract between Landcraft and Haynes, that Haynes was to satisfy and discharge said deed of trust debt, which I infer was a lien on the one hundred and forty-nine and two hundred and seventy acre tracts and thereby release the two hundred and seventy acre tract from said deed of trust, as well as the one hundred and forty-nine acres; that it is alleged in the bill of *Gardner et al. v. Landcraft et al.*, that said deed of trust did cover both of said

1877.
January Term

Davis
v.
Landcraft et al.

tracts of land, as appears by the copy of said bill filed by Landcraft with his first answer; Haynes did pay said deed of trust debt, but instead of taking a receipt against the same in full, or a release, he took an assignment of the debt, and joined in with Gardner and others, to have both of said tracts of land sold to pay said deed of trust debt to himself (which, on the 22d day of June, 1871, amounted to $1,392.05), and also the judgment of Gardner and others, amounting, at the date last aforesaid to the sum of $807.49 and $11.56 costs, and requiring, as provided in the decree of sale, that a sufficient amount of the purchase money should be paid in cash to the commissioner, not only to pay the costs of suit, but also to pay said deed of trust debt; that the lands, however, were not sold under said decree by the commissioner until the 13th of May, 1873, some months after all the deferred installments of purchase money from him to Landcraft had become payable, and largely more than sufficient to pay the said judgment of Gardner and others, and the costs of the suit. Yet he purchased of the commissioner, at private sale, per the consent, in writing, of himself and Landcraft, and by the consent of others interested in the suit, both tracts of land at nearly $400.00 less than he agreed to pay for the one tract of one hundred and forty-nine acres. If the plaintiff had, by his bills, sought, by proper allegations, to charge the two hundred and seventy acres of land in the hands of Haynes, on the ground that, under the circumstances of the case, it should be considered that the two hundred and seventy acres of land so purchased by Haynes, at said commissioner's sale, by implication of law, was, or is, held by Haynes for the use of Landcraft, and that he held the legal title in trust for him, in fraud of Landcraft's creditors, including plaintiff and said Shanklin; and alleging, in proper form, the indebtedness of Haynes yet for a part of the purchase money for said one hundred and forty-nine acres, to-wit: $————, with interest thereon, and that the same constitutes a lien on said

one hundred and forty-nine acres of land in the hands of said Haynes, which the plaintiff is entitled to have enforced to satisfy his judgment, then the material facts upon which the plaintiff grounds his claim to relief as against the said lands would be so presented as that the said Haynes, or Landcraft, or both, would be apprised against what suggestions they were to prepare for their defense, and the court could have considered the charges of the bill and their sufficiency, and if it ascertained them to be sufficient, then have determined whether they were established by the evidence in the cause, so as to enable the court to grant the relief prayed in whole or part. " However, a charge in general terms where it is the point on which the merits of the case turns, and does not come in collaterally and incidentally, will warrant the production of evidence to particular facts." Cooper's Eq. Plead. p. 7. The plaintiff in this case, by his amended bill, relies upon fraud in the contract of sale of Landcraft to Haynes, and the inadequacy of price. There is not proof in the cause that Landcraft made more than the one sale to Haynes, and that was the sale of the 12th of March, 1870, and the evidence does not establish fraud, or inadequacy of price in that sale. The evidence shows that possession of said one hundred and forty-nine acre tract was delivered to Haynes at the time he purchased it, at the date of said title bond; that he has held possession of it ever since, and paid the taxes on it; and that he had since the purchase, made valuable improvements thereon. It is true that it appears that some time in the year 1870 (whether before, or after the said sale of the 12th of March, 1870, does not appear), said Haynes married the niece of Landcraft's wife, who, at the time of the marriage, lived with Landcraft and wife on some part of the land in question, either the two hundred and seventy acre tract, or the one hundred and forty-nine acre tract, and that Landcraft and Haynes have lived together in the same house on the land, ever since Haynes made his said purchase. It

also appears by the evidence, that Haynes has been in the possession of said two hundred and seventy acres of land, ever since he purchased it from Harris. Now, I apprehend that the mere fact that Haynes permitted the said Landcraft to reside with him in the dwelling house on said land after the purchase, when Haynes was, himself, in the actual possession and control of the property and improving it, would not constitute a badge of fraud in and of itself, and avoid the sale as to creditors, as fraudulent. It is true that, where property conveyed by absolute bill of sale, was permitted to remain in the possession of the vendor, without any reason shown why it should have so remained, the statute of fraud and perjuries and the principles of the common law of which that statute is declaratory, utterly condemn and avoid a conveyance thus infected by fraud. See the opinion of Judge Samuels in the case of *Williamson, ex'or, v. Goodways et al.*, 9 Gratt., p. 506, and authorities there cited. But if the sale made by Landcraft to Haynes on the 12th of March, 1870, of the one hundred and forty-nine acres was made to delay, hinder and defraud the creditors of Landcraft and was void as to such creditors, that fact would not be sufficient to enable the plaintiff to succeed in this case, for then the purchase of the whole lands by Haynes of Harris, special commissioner, and the confirmation of that sale by the court, under the circumstances, confront the plaintiff, and he has not, in his said bills, sought to impeach that transaction, or proceeding in a proper manner, under the authorities on that subject, as we have already seen. It may be remarked that there is no evidence that Haynes paid said deed of trust debt with the money of Landcraft, or the purchase money paid to Harris, or even that Haynes was insolvent or was not able to have done so, even though such evidenc was relevant under the pleadings in the cause. Haynes also swears that he paid the $3,000.00.

Judge Story, in his work on Eq. Plead. §28, says : " It may be proper, however, to remark, that every ma-

teial fact, to which the plaintiff means to offer evidence, ought to be distinctly stated in the premises; for otherwise he will not be permitted to offer or require any evidence of such fact. A general charge or statement, however, of the matter of fact is sufficient; and it is not necessary to charge minutely all the circumstances, which may conduce to prove the general charge; for these circumstances are properly matters of evidence, which need not be charged in order to let them in as proofs." Again, at paragraph 241, he says: "In the next place it may be affirmed, as an elementary rule of the most extensive influence, that the bill should state the right, title or claim of the plaintiff, with accuracy and clearness; and that it should, in like manner, state the injury or grievance of which he complains, and the relief which he asks of the court. In other words, there must be such certainty in the averment of the title upon which the bill is founded, that the defendant may be distinctly informed of the nature of the case which he is called on to meet. The other material facts ought, also, to be plainly, yet succinctly, alleged, and with all necessary and convenient certainty, as to the essential circumstances of time, place, manner and other incidents." These citations seem to state correctly the general doctrine upon the subject to which they relate, so far as I am advised.

The views herein expressed as applicable in this cause to plaintiff, applies equally to Shanklin as a judgment creditor of Landcraft, though it is proper to remark that Shanklin has not appealed. The appeal is taken alone by the plaintiff. The plaintiff filed exceptions to the depositions of Landcraft and Haynes. In so far as Landcraft or Haynes testify to the contents of a written contract or decree, the evidence is inadmissible, but as the contract is filed, and the execution thereof proved, and official copies of the decrees are filed, the exclusion of such evidence could not effect the result in the case. For the foregoing reasons, I do not feel authorized to de-

1877.
January Term.

Davis
v.
Landcraft et al.

cide that there is error in the decree rendered in this cause by the circuit court of Summers county, on the 15th day of September, 1876, but I am of opinion that the same should be affirmed, but without prejudice to any suit or proceeding that the said James W. Davis and James L. Shanklin, or either of them, may hereafter commence or institute against the said Grandison C. Landcraft, or any person or persons, to enforce their said judgments, or either of them, recovered against said Landcraft, or the lien or liens thereof in the bill and proceedings mentioned in this cause, which they, or either of them, may have against any purchase money, lien of said Landcraft, if any he has, or is entitled upon the one hundred and forty-nine acre tract of land in the said proceedings and the title bond from said Landcraft to said Haynes, dated the 12th day of March, 1870, filed in this cause, marked A, is mentioned, which may, according to the rules and principles of equity, be liable therefor. And also, without prejudice to any proceeding which said Davis and Shanklin, or either of them, may hereafter commence or institute to impeach the said decrees, or either of said decrees, of the circuit court of the county of Monroe, rendered on the 22d day of June, 1871, and the 14th day of May, 1873, respectively, in the cause of *James H. Gardner et al. v. G. C. Landcraft et al.*, in the proceedings in this cause, and this opinion mentioned, for fraud in their procurement, or in the procurement of either of said decrees, or in the sale made by special commissioner John W. Harris, in said last named decree mentioned, and to subject the lands, or any part thereof so purchased by said Haynes, from said special commissioner, Harris, at such sale to the payment of their said judgments, or either of them, and the lien, or liens thereof, because of such fraud, if it exists. And also without prejudice to any suit or proceeding the said Davis and Shanklin, or either of them, may hereafter commence or institute, to enforce their or his said judgment, or the lien, or liens thereof, against any interest of every name, kind and

description in said lands, or any part thereof, purchased by said Haynes from said special commissioner, Harris, as aforesaid, which the said Landcraft may have, or may be entitled, by reason of the said last named purchase of Haynes, growing out of, or springing from said purchase, and the relation of said Landcraft and Haynes, as vendor and vendee under the contract of sale of the said one hundred and forty-nine acres of land by said Landcraft to said Haynes, of the said 12th day of March, 1870.

DECREES AFFIRMED.