## BLACK v. SMITH, *et al.*

### Decided September 7, 1878.

<span style="margin">1878
August Term.</span>

1. When a court of law in the State of Maryland, having jurisdiction of the subject and person of the citizen, renders judgment in a cause, therein pending against such citizen for money, the validity of such judgment, rendered by such court, cannot be questioned in the courts of this State; nor will the courts of this State look into the transaction upon which the Maryland judgment is founded, in order to ascertain if that judgment ought not to have been rendered by the court. But while this is true generally, a judgment of a court of law, rendered in this State, based upon a judgment of a court of law of Maryland, may be enquired into for equitable causes and equities and, if not for all, for most of the causes, which would authorize an injunction in equity to a judgment of a court of law of this State.

2. The defendant to such Maryland judgment, to whom a day and opportunity has been allowed to make his defense in the court of law in Maryland, which rendered such last named judgment, against the demand, for which such judgment was rendered, but who has wholly failed to avail himself of them, will not be entertained in a court of equity of this State on a bill, seeking relief against a judgment rendered in this State by a court of law, based upon said Maryland judgment, rendered in consequence of his default, upon grounds, which might have been successfully taken in the Maryland court of law, unless some reason founded in fraud, accident or surprise, or some adventitious circumstances beyond the control of such defendant, be shown, why the defense was not made in said Maryland court.

3. The mere averments by a plaintiff in his bill asking for an injunction are not sufficient; he must prove them.

4. The 5th and 6th sections of chapter 126 of the code of this State do not enlarge the jurisdiction of courts of equity.

Appeal from and *supersedeas* to a decree of the circuit court of Jefferson county, rendered on the 22d day of November, 1877, in a cause, in said court then pending, in which G. W. Z. Black was plaintiff, and C. F. Smith, and Edward Tearney, were defendants, allowed on the petition of said Black.

1878
August Term.

Black
v.
Smith *et al.*

Hon. John Blair Hoge, judge of the third judicial circuit, rendered the decree complained of.

The facts of the case are fully stated in the opinion of the Court.

*Daniel B. Lucas*, for appellant, relied on the following authorities :

Code of W. Va. p. 609, § 6 ; 3 Story on Const. § 1303 ; 1 Overt. (Tenn.) 266, 267 ; 4 Allen 145 ; 14 Pick. 217 ; Story on Contr. § 427 a. n. 3 ; 1 Parsons on Contr. 462 and n.

*Baylor & Wilson*, for appellees, relied on the following authorities :

9 Gratt. 40 ; 10 Gratt. 506 ; 6 Johns. Ch. 89 ; 7 Cranch 332 ; 7 Leigh 157 ; 17 Md. 188 ; 24 Gratt. 548 ; 2 Lead. Ca. Eq. 1369 and cases cited ; 18 Gratt. 282 ; 2 Lead. Ca. Eq. 1335 ; 10 W. Va. 156 ; 3 Md. Ch. 392 ; 23 Gratt. 38? ; 11 W. Va. 217 ; 13 Gratt. 380 ; Story Eq. Pl. § 251 a. ; 3 Rand. 504 ; 17 How. 445 ; 1 Rob. Prac. 255 ; 2 Lead. Ca. Eq. 1344 ; 13 N. H. 318 ; 8 Conn. 469 ; 6 Rand. 125 ; 7 W. Va. 282 ; U. S. R. S. § 4898 ; 16 Gratt. 335 ; 10 Gratt. 506.

HAYMOND, JUDGE, delivered the opinion of the Court :

The plaintiff in his bill alleges, that in the spring of 1869, in the county of Frederick, State of Maryland, he became acquainted with one B. G. Fitzhugh, who came to him and stated, that he had an invention for improved letter boxes, which he was anxious to introduce for pub-

lic use through the Post Office Department, and offered and proposed to give him (plaintiff) an interest in the same, provided he (plaintiff) could secure its adoption by the United States Government; that plaintiff, readily undertook to secure its adoption, if possible, and received such verbal assurances from the head of the department in Washington, as led him to believe, that the Department had certainly concluded to adopt the invention.

That at this juncture said Fitzhugh and one —— McKellip introduced to the plaintiff the defendant, C. F. Smith, and represented, that said Smith had a prior claim upon the invention to the extent of $750.00, for moneys therefor advanced by said Smith to said Fitzhugh for the purpose of carrying on and perfecting his invention.

That thereupon said Fitzhugh, McKellip and Smith represented to plaintiff, that he ought to repay to said Smith all the advances, which he had made, and that they would thus become equal partners in the invention, —the said partnership to consist of McKellip, Fitzhugh, Smith and complainant. That being thus urged by the parties, the plaintiff, executed his three notes for $250.00 each, payable to said Smith,—it being fully understood by all the parties interested, that these notes were to be paid by complainant out of his share of the profits realized by the said invention, and *not otherwise, nor from any other source whatever.*

That the contract was based upon the supposition, that the said invention had been finally accepted and adopted by the department. This mistake was shared, as plaintiff believes, by all the parties to the partnership; certainly plaintiff was laboring under this misapprehension; and it was under its influence, that he gave his said notes. That he has reason to believe *now*, and therefore charges, that the three parties above named were adventurers and speculators, bent upon deluding and defrauding plaintiff, if possible, but plaintiff did not believe, that said

Smith expected payment of said notes except from the profits of said invention, then believed to be a perfect success.

Plaintiff further alleges, that notwithstanding the assurances, which had been given, nevertheless the department finally rejected the invention; that said Smith never made any demand upon plaintiff for the payment of said three notes, until after the lapse of nearly or quite three years. As soon as such demand was made, plaintiff resisted it with energy, upon the ground, well known to Smith, that the consideration had utterly and absolutely failed, that Smith thereupon brought suit in the circuit court of Frederick county, Maryland; and plaintiff, employed John C. Metter, Esq., an attorney at law, to make his defense in said court.

That at the term of said court, 18——, when the case was matured for trial, the plaintiff was advised, that under the law of the State of Maryland he was entitled to have said cause removed into another circuit; and that it was necessary and expedient under the circumstances for his defense, that such a removal should be had. He therefore prepared the necessary affidavit, and placed it in the hands of his said attorney, whom he had previously acquainted with the nature of his defense to the action, necessary for the preparation of his special plea in bar. Plaintiff had no other counsel whatever employed in the case, although by an entire mistake and misunderstanding a friend of plaintiff, William P. Maulsby, Jr., had his name entered for the defense; but plaintiff avers, that he had never employed said Maulsby, nor had any conference nor consultation with him about the case, nor in any way authorized him to appear.

That at the term when the case was to be called for trial, said John C. Metter was detained from the court by absolute and imperious necessity, growing out of the illness and death of his father during the term, so that he was absent, when the case was called; and judgment was accordingly given against plaintiff, who was at that

time unavoidably absent from the State of Maryland, for the whole amount of said notes. Plaintiff having placed his whole case in the hands of his counsel was entirely ignorant, that any such judgment was entered until after the adjournment of court. He then knew and now avers, that the *unavoidable absence* of his counsel was a proper ground for continuance; and he did not have any reason to believe, that it would be taken advantage of to secure a judgment against him. He had no knowledge whatever, that said Maulsby had been entered on the record as his counsel. That at a succeeding term plaintiff, through his counsel, entered a motion to strike out said judgment, which motion is still pending and undetermined.

Plaintiff further avers, that subsequently said Smith brought suit in the circuit court of Jefferson county upon said judgment, and obtained judgment thereon at the October term, 1876, for the sum of ——; that plaintiff was advised, that he could make no defense at law to the action upon said judgment dependent upon extrinsic testimony; and his defense of *nul tiel record* was overruled by the court. Plaintiff is advised therefore, that he has no remedy except in a court of equity. He avouches the several records of said two suits, and prays, that the same may be considered a part of his bill, and that an injunction may be awarded him to restrain the said C. F. Smith, and Edward Tearney, the sheriff of Jefferson county, who has levied execution upon the personal property of plaintiff, and is threatening to sell the same, from all further proceedings upon said judgment and execution, until the whole matter can be enquired of, and determined by a court of equity.

That plaintiff has been informed, and therefore avers, that said C. F. Smith has no property, that can be reached by the levy of an execution. Plaintiff bases his application upon the ground, that the chancellor has original equity jurisdiction over questions of fraud, conspiracy, mistake and failure of consideration, and will enjoin a

1878
Special Term.

Black
v.
Smith *et al.*

judgment obtained upon a contract so tainted or invalidated, provided the applicant has not precluded himself from such interferance by pleading the same in bar of the action at law; and upon the further ground, that the Maryland judgment was obtained by *surprise,* without any negligence on the part of the complainant or of his counsel, and upon the further ground that the sale of his property now levied upon will, under the circumstances, occasion him great loss, inconvenience and irreparable injury, the said Smith being a non-resident of West Virginia, and practically insolvent.

Theretore plaintiff prays, that the defendants may be required to answer the bill; that injunction as aforesaid may be awarded; that proper process may issue, and for such other and general relief, as may be equitable. This bill is verified by the affidavit of the defendant.

The Judge of the circuit court of Jefferson county granted an injunction, restraining the defendants from proceeding to enforce the judgment and execution, in the bill referred to, until further order of the court &c.

It appears, that on the 1st of March, 1877, the defendant, C. F. Smith, filed with the clerk in his office his answer to the plaintiff's bill, in which he says, that he has no knowledge of the truth or falsity of the statement in the bill professing to detail the circumstances, under which the plaintiff became acquainted with B. G. Fitzhugh, or of the alleged conversation between plaintiff and said Fitzhugh, nor of the alleged arrangement, agreement or contract between said parties, nor of the alleged services of the plaintiff in furtherance of his personal interests at the Post Office Department at Washington, nor of the alleged verbal assurances, that were made to him by the head of the said department.

He admits that Fitzhugh and William A. McKellip introduced him to the complainant, and made representations, stated in the bill, as to the indebtedness of said Fitzhugh to the defendant, which were true. He admits, that the said Fitzhugh and McKellip represented

to the plaintiff, that he should pay to him (Smith) said sum of money, owing to him by said Fitzhugh, and all of said parties thus become equal partners in the invention, in the bill mentioned; which the complainant agreed to do, and thereupon gave the notes in said bill mentioned.

He denies the allegation in the bill, that there was an understanding between all of said parties, that said notes were to be paid out of plaintiff's share of the profits realized by said invention, and not otherwise, and not from any other source whatever ; and he denies, that the contract was based upon the supposition, that the said invention had been finally accepted and adopted by the department ; and he answering states, that all said allegations are false.

He also says, that the allegations in said bill, that the plaintiff has reason to believe *now*, that said Fitzhugh and McKellip and he (Smith) were adventurers and speculators, bent upon deluding and defrauding the plaintiff, if possible, comes with very ill grace from one, who was willing to recognize these parties as gentlemen of the highest honor and integrity, whilst there was a prospect of realizing large profits out of a valuable invention, in which they and plaintiff all had the greatest confidence, and who has only discovered, or imagined he has discovered, their depraved character and their wicked attempts to delude so childlike and innocent a person as the plaintiff, when one of them is seeking in a legal and open way to make the plaintiff pay an honest debt, which he by every means in his power is endeavoring to evade and avoid. And he denies, that the contract between plaintiff and them was based on the supposition, that the said invention had been finally adopted and accepted by the department aforesaid, admitting nevertheless, that all the parties concerned were confident in their expectation and hope, that it would be so finally accepted and adopted.

Further answering respondent denies, that said notes

were given by plaintiff to respondent on such supposition, but were given, as the plaintiff well knew and understood, for a fourth interest in said invention; and he denies, that he never made any demand on the plaintiff for the payment of said notes; and he states on the contrary, that before the first note became due the plaintiff notified respondent, that he was not then in funds to meet said note; and that afterwards respondent wrote to plaintiff, demanding payment of said notes, and received in reply a letter from plaintiff, which is herewith filed as part of this answer, marked 'C. F. S. No. 1;' and that afterwards, finding the plaintiff would not meet his obligation without suit, and believing that he would take advantage of the statute of limitations to escape from an honest claim and debt, he caused suit to be brought before the said statute attached, and obtained judgment in the circuit court of Frederick county, Maryland.

He denies the "long and labored" statement of complainant with reference to said suit in said court, believing that the same is not true, as alleged in said bill, and that even if true in whole or in part, it cannot and does not entitle the plaintiff to the relief prayed.

He admits, that he brought suit in the circuit court of Jefferson county, West Virginia, on said judgment, and obtained judgment therein, as stated in said bill; and he is informed, and believes, and so charges, that in the said suit the plaintiff made all the defenses, that he sets out in said bill; and that the said judgment is a valid and a subsisting judgment, unappealed and unanswered; and that the plaintiff is estopped from setting up any of the defenses against the same, set out in said bill; and that equity has no power or jurisdiction to afford him the relief prayed.

Respondent denies the insinuation or averment in said bill, that he has no property, that can be reached by the levy of an execution; and he states, that said averment or insinuation is *false* and *malicious*; and he avers, that he has property and estate, real and personal, amply

sufficient to meet any demands that the plaintiff can possibly have against him.

He denies, that their has been any fraud, conspiracy, mistake or failure of consideration in the matters of this controversy; and he denies, that the judgment, obtained as aforesaid in the circuit court for Frederick county, Maryland, was obtained by surprise, as stated, without any negligence on the part of the plaintiff, or his counsel.

"And again denying the malicious and unfounded allegations in said bill with reference to said notes, and the whole premises, and the alleged insolvency of this respondent, and reiterating the averment, that said notes were given for a good and *bona fide* consideration, this this respondent prays, that said injunction may be dissolved, and that he may be hence dismissed with his reasonable costs and charges, in this behalf wrongfully sustained. And as in duty bound, &c." This answer is verified by the affidavit of the said Smith.

Exhibit "C. F. S. No. 1," mentioned in the answer, is as follows:

FREDERICK, MARYLAND, December 4, 1871.

*Mr. Charles F. Smith, No. 6, South street, Baltimore, Md:*

DEAR SIR :—

Yours of the 17th November came duly to hand, and my reply has been delayed, with the hope of seeing Mr. Fitzhugh before writing to you. About ten days previous to the receipt of your letter I came with him from Washington, where he was negotiating for the sale of an improved cart at $20,000.00, and from the proceeds of which he promised to straighten up this whole matter. I shall see him as soon, as he comes home, which will be next week; and after my interview will write you more in detail.

Very truly yours,

G. W. Z. BLACK.

This letter is proven to be in the hand writing of the plaintiff, Black. From an official copy of the record of the proceedings had before the circuit court of Frederick county, Maryland, in the suit in the bill mentioned, which is filed with the bill, it appears, that that suit was commenced by the defendant, Smith, in said last named court on the 6th day of December, 1871 ; and that the suit was an action of *assumpsit.* It also appears, that at the time the summons was issued in the cause, the plaintiff in that suit filed in court the three several promissory notes given by plaintiff, Black, to defendant, Smith, in the bill mentioned. It further appears by said record, that the summons issued in said action of *assumpsit* was served by the sheriff upon said Black. It also appears; that on the second Monday of December, 1871, the day to which the said summons in the action of *assumpsit* was made returnable, the said Black being called appeared in court by John C. Metter, his attorney, Milton G. Urner, being the attorney of said Smith. And thereupon by order of the court the cause was continued until the third Monday of February, A. D. 1872. On said third Monday of February, 1872, the parties appeared by their said attorneys ; and on motion of said Black, by his said attorney, it was ruled by the court, that unless said Smith declare against the said Black in the plea aforesaid, judgment by the court would be rendered against him by default. And thereupon the said Smith by his said attorney filed in court his declaration against said Black.

The declaration contains three several counts, each of which is based upon one of said notes. · On the filing of said declaration, and on the same day, on motion of said Smith by his attorney it was ruled by the court, that the said Black plead to the said declaration of said Smith, or judgment of the court would be rendered against him in default thereof. And thereupon the said Black, by his said attorney, filed in court two pleas to said action, which are in substance: 1st. *Non-assumpsit,* and the 2d. *Nil debet.*

The court ruled, that said Smith reply to said pleas, or judgment by the court would be rendered against him. And thereupon further proceedings in the cause by consent and by order of the court were continued from term to term of the court until the 16th day of September, 1872, at which time came again into the court the said Smith, by his attorney, and the said Black, by his said attorney, and also by William P. Maulsby, Jr., Esq., who appeared for said Black as attorney in the plea aforesaid. On the 23d day of October, 1872, issues were joined upon said pleas; and thereupon the cause was submitted to the court for trial: and the court in due form rendered judgment upon the issues joined in the cause on the day and year last aforesaid in favor of said Smith against said Black for $892.50 damages, with interest from the date of the judgment, and $8.80 costs of suit.

It further appears by said record, that afterwards, and at a succeeding term of said circuit court of said Frederick county, Maryland, and on the 17th day of February, 1873, the said Black by his said attorneys entered in said court a motion to strike out the judgment aforesaid, so as aforesaid rendered against him; but it does not appear, that said motion to strike out was ever disposed of by the court. It also appears by said record, that a writ of *fi. fa.* issued on said judgment and was returned *nulla bona.*

By the record of proceedings, had in the circuit court of the county of Jefferson, in the suit of said Smith against said Black, in the bill mentioned, it appears, that the last named suit was an action of debt based on said judgment, rendered by the circuit court of Frederick county, Maryland; that the declaration was filed at February rules, 1876; and that at the April term, 1876, of the circuit court of Jefferson county the defendant appeared, and craved *oyer* of the record in the declaration mentioned, and demurred to the declaration, in which the plaintiff therein joined, and the office judgment was set aside, and on the same day the defendant pleaded *nul tiel*

*record,* on which issue was joined. The court over-ruled the demurrer to the declaration ; and the record of the supposed recovery in the declaration mentioned being seen and inspected by the court, the court deter-mined, that there was such record of the recovery, as in the declaration mentioned, and rendered judgment in favor of the plaintiff against the defendant therein for the sum of $1,115.50 with interest thereon from the 13th of November, 1876, until paid, and his costs of suit. No other pleas were filed, or offered to be filed, by the said Black in said last named action except those above mentioned.

Some depositions were taken in the cause at bar by both plaintiff and defendant, Smith ; and such parts thereof will be referred to hereinafter, as are deemed material to the matter put in issue between the parties by the pleadings, &c.

It appears by the record in this cause, that on the 22d day of November, 1877, the cause came on to be heard on the bill and exhibits, and the answer of the defendant, C. F. Smith, and the exhibits filed therewith and the depositions filed in the cause, and on the motion of said Smith to dissolve the injunction awarded in the cause ; and the court dissolved the said injunction and dismissed the plaintiff's bill with costs.

From and to this decree the plaintiff, Black, has here-tofore obtained an appeal and *supersedeas* from this Court ; and it must now be determined, whether there is error in the said decree, for which the same should be reversed.

The first section of the fourth article of the Consti-tution of the United States declares, that " full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner, in which such acts, records and proceedings shall be proved and the effect thereof."

What is the true meaning and interpretation of the first section of this clause?

" 'Full faith and credit *shall* be given; 'What is meant by 'full faith and credit?' Does it import no more than, that the same faith and credit are to be given them, which by the comity of nations is ordinarily conceded to all foreign judgments? or is it intended to give them a more conclusive efficiency approaching to, if not identical with, that of domestic judgments; so that, if the jurisdiction of the court be established, the judgment shall be conclusive as to the merits? The latter seems to be the true object of the clause; and indeed it seems difficult to assign any other adequate motive for the insertion of the clause, both in the confederation and in the Constitution." 3 Story on the Const., §1303, p. 178.

In the case *Mills* v. *Duryee*, 7 Cranch 481, the question was, whether *nil debet* was a good plea to an action of debt, brought in the District of Columbia, and judgment rendered in New York. It appeared that the defendant was arrested and gave bail, and so had full notice of the suit. There was no doubt, that in a court of New York the record of the judgment would have been conclusive upon the parties. The Supreme Court considering that the judgment had the same effect, when an action was brought on it in another State, *held* the plea to be bad. The same question was presented in *Hampton* v. *McConnell*, 3 Wheat. 234, and decided the same way. "The judgment of a State court (if there was jurisdiction to render it) will have the same credit, validity and effect, in every other court in the United States, which it had in the State, where it was pronounced, and whatever pleas would be good to a suit thereon in such State, and none others, can be pleaded in any other court in the United States. The judgment will have this credit, validity and effect, even when the original suit was commenced by an attachment, if the record show, that the defendant had personal notice of the

suit and afterwards appeared and made defense." 1 <sub></sub> <span style="float:right">1878<br>August Term.</span>
Robinson's New Pr. 217 ; *Mayhew* v. *Thatcher* 6 Wheat. <span style="float:right">Black<br>v.<br>Smith *et al.*</span>
129. See *Clark's adm'r* v. *Day*, 2 Leigh 172 ; Story
Conflict of Laws §609, pp. 800, 801.

Mr. Robinson in the 6th vol. of his Practice at page 438,
says: "If the defendant was duly served with process,
or appeared and made defense, and thus the court, which
gave the judgment, had jurisdiction, the validity of the
judgment cannot be questioned in another State, because
of mistake of the court, which gave it, or on any other
ground."

The Supreme Court of Massachuetts having decided
in *Bissell* v. *Briggs*, 9 Mass., that if a court of another
State, which has rendered judgment against a citizen of
Massachuetts, had jurisdiction over the subject and par-
ties, such judgment bound the citizen, and he would not
be permitted to look into the transaction in order to
show, that such judgment ought not to have been
rendered. This decision governed the case of *Jacobs* v.
*Hall*, 12 Mass. 25.

As we have seen in the case at bar the suit in Mary-
land, as well as that in this State, of which complaint is
made in the bill, was an action at law ; and it appearing <span style="float:right">Syllabus 1.</span>
that in the suit at law in Maryland the said Black, the
defendant therein, was personally served with the writ
issued in the cause, and also appeared in the court then
by his attorney or attorneys, and filed pleas to said
action, and made defense thereto, the court having jur-
isdiction of the cause, the validity of the judgment ren-
dered by said court cannot be questioned in the courts of
this State; nor will the courts of this State under the
authorities cited look into the transaction, upon which
the Maryland judgment is founded, in order to ascertain
if the judment ought not to have been rendered by the
court. But, while this is true generally, I apprehend,
that a judgment of a court of law in this State, based
upon a judgment of a court of law of another State,
may be enjoined by injunction by a court of equity for

equitable causes and equities, and, if not for all, for most of the causes, which would authorize an injunction in equity to a judgment of our own courts of law. *Wilson* v. *Robertson*, 9 Tenn. 266.

In this case Judge Whiteside delivered the opinion of the court, in which he says : " It has been determined by our courts, that a judgment of another of the United States is not to be considered in the same view as a judgment of a foreign country, and that the plea of *nil debet* will not lie as it would to a foreign judgment, agreeably to the English authorities. Hence it results, that our courts seem disposed to consider the judgment of another State in the same point of view with a judgment of our own under similar circumstances. If an action of debt should be brought upon one of our own judgments, an injunction in equity lies. So it is with respect to judgments under the municipal regulations of another State, consistent with the rights of sovereignty believed to exist in this State and the nature of courts of justice." In the case of *Pearce* v. *Olney*, 20 Conn. 544, Judge Hinman at top page 555 and side page 556 says : " In granting an injunction against proceedings at law, whether in a foreign or domestic court, there is no difference ; the court of equity does not presume to direct or control the court of law ; but it considers the equities between the parties, and acts upon the person and restrains him from instituting an action. 2 Story Eq. §875. See also *McGilton* v. *Love*, 13 Ill. 486. The decision in the case last cited seems to be approved by Hilliard. See Hilliard on Injunctions 2d ed. 182, chap. 5, §10. Hilliard at page 183 of same work and in said paragraph 10 says : "So equity will restrain the use of advantage gained in a court of ordinary jurisdiction of another State by fraud, accident, or mistake ; " and he cites *Pearce* v. *Olney*, 20 Conn. 544.

The plaintiff, in the case at bar alleges as grounds of equitable relief against the judgment rendered in this State, based upon the Maryland judgment: 1st that the

three promissory notes, upon which the Maryland judgment is based, were executed with the full understanding by all the parties, that the notes were to be paid by plaintiff out of his share of the profits realized by the said invention, and *not otherwise, nor from any other source whatever*: 2d, that the contract (that is the giving of said notes, &c.,) was based upon the supposition, that the said invention had been finally accepted and adopted by the department; that this *mistake* was shared, as defendant believes, by all the parties to the partnership, certainly plaintiff was laboring under this misapprehension; that he had received from the Post Office Department at Washington before said contract such assurances, as led him to believe, that the department had certainly concluded to adopt the invention; that notwithstanding the assurances, which had been given, the department finally rejected the invention; and the consideration of said notes had therefore utterly and absolutely failed; and 3d, that he was taken by surprise

*As to the first ground of alleged equitable relief relied upon.* If such defense under the allegations of the bill could be legally set up and proved in contradiction or variation of the face of the notes, which I do not now decide, because immaterial as the case stands, the evidence manifestly does not sufficiently prove this alleged ground of defense. The allegation of the bill as to this matter is denied by the answer; and considering all the evidence *pro* and *con* in the record touching the subject, this allegation is not in my judgment sufficiently or satisfactorily established by the evidence.

*As to the second ground of alleged equitable relief relied on.* The defendant in his answer expressly denies, that the contract was based on the supposition, that the said invention had been finally accepted and adopted by the department. The plaintiff in his first deposition taken and filed in the cause says: "I was originally to get the Postoffice Department to accept and adopt it; and afterwards, when said notes were given, all the parties, viz:

1878
August Term.

Black
v.
Smith *et al.*

Smith, Fitzhugh, McKellip and myself, supposed it had
been adopted; it turned out, that I gave my notes under
that impression, that it had been adopted by the Post-
office Department." He also says in his same deposition
that the invention turned out to be perfectly worthless.
The department did not adopt the invention.    It is mani-
fest from the whole case, that if the said invention had
been accepted by the Postoffice Department, it would
have been of great value to its owners, that is to say, they
would have received a large amount from the Postoffice
Department for it; but on the said department refusing
to accept it, it was worthless; or in other words, whether
the invention was valuable to its owners, or worthless,
depended on the adoption or rejection of it by said de-
partment.    McKellip in his deposition taken by the de-
fendant says; that "he, Smith and Fitzhugh felt confi-
dent of the adoption of the box by the government, and
had no doubt about it.    Black himself expressed a great
desire to become interested in the matter; and to the
best of my recollection he arranged for a meeting at Bar-
num's Hotel in the month of May: and at the time when
the notes now in controversy were given, Smith posi-
tively refused to enter into any arrangement, whereby
Black should have an interest, until he, Smith, was first
reimbursed, or payment secured, for the amount of money
he had advanced to Fitzhugh in the matter of obtaining
his patents.    The three notes were given for a fourth in-
trest in that invention; and there was not one word said
about paying these notes out of the profits.    On the con-
trary they were given by him to secure the fourth inter-
est in that invention, which he equally with Smith, Fitz-
hugh and myself deemed of great value; and he could
not have received a fourth interest in that invention with-
out giving these notes, or paying the money.    Smith,
the plaintiff in this case, held the half interest in the
whole invention at the time of the execution and delivery
of these notes, while Fitzhugh and I held a fourth in-
terest each; and these notes, were given in consideration

of one half of Mr. Smith's interest; and there was no understanding or agreement, that the notes were to be paid out of the profits."

Greenleaf in the second volume of his work on evidence 10th edition by Redfield at pages 113, 114, 115, 116, 117, says: "In regard to the admissibility of evidence of failure or want of consideration, as a defense to an action of *assumpsit*, there is an embarrassing conflict in the decisions. A distinction however has been taken between those cases, where the consideration was the conveyance of real property, and those where it was wholly of a personal nature, such as goods or services, and also between a total and a partial failure of the consideration. When the consideration is personal in its nature, and the *failure is total*, or the defendant has derived no benefit at all from the services performed, or none beyond the amount of money, which he has already advanced, it seems agreed, that this may be shown in bar of the action. If an express contract for a stipulated price the failure of a similar consideration is partial only, the defendant having derived some benefit from the consideration, whether goods or services, and the count is special upon the express contract, the English rule seems to be, not to admit it to be shown in bar *pro tanto*, but to leave the defendant to his remedy by action; unless the *quantum* to be deducted is matter susceptible of definite computation; but when the plaintiff proceeds upon general counts, the value of the goods, or services, may be decided by evidence for the defendant. The American courts to avoid circuity of action, have of late permitted a partial failure of consideration to be shown in defense *pro tanto* in all suits on contracts respecting personal property or services; only taking care that the defense shall not take the plaintiff by surprise. But when the consideration is of real estate, conveyed by deed with covenants of title, promissory notes given for the purchase money, the better opinion seems to be, that on common law principles the covenants in the deed con-

stitute a sufficient consideration, for the notes, and that the failure of title constitutes no ground of defense to an action upon them. In some of the United States however this defense has been allowed." See also note 1, p. 114 and note p., 115. See also § 281 p. 271.

In the 1st Vol. of Story on Contracts, 4th edition § 480 pages 583, 584 it is said to be the law, that, "where the consideration totally fails, that is, when that, which was supposed to be a consideration, turns out to be none, the contract, as far as the immediate parties are concerned, may be cancelled; and the same applies, as if there never had been any consideration." 1st Vol. Parsons on Contracts 5th edition § 14, page 462. See as bearing on the subject 2 vol. of Greenleaf, above cited § 135, pages 112 and 113.

Story in his work on promissory notes in § 187 says: "The objection to a note may be, that there is a total want of consideration to support it ; or that there is only a partial want of consideration. In the first case, it goes to the entire validity of the note, and avoids it. In the latter case it affects the note with nullity only *pro tanto.* The same rule applies, where there was originally no want of consideration; but there has been a subsequent failure thereof either in whole or in part. For a subsequent failure of consideration is equally fatal with an original want of consideration, not indeed in all cases, but in many cases at least, where it is a matter capable of definite computation, and not merely unliquidated damages."

The same author says at § 190: "In the next place, between what parties, and under what circumstances, is the consideration of a promissory note enquirable into for the purpose of a defense, or a bar, to an action brought thereon? The general rule is, that the total or partial want or failure of consideration, or the illegality of consideration, may be insisted upon as a defense, or a bar, between any of the immediate or original parties to the contract. It may be insisted by the maker against the

payee, &c.   See also Story on Bills, § 184; *Eben. A. Lester* v. *Gilman M. Palmer* 4 Allen (Mass.) 145; *Dickman* v. *Hall* 14 Pick. 217 ; *Parish, et al.* v. *John Stone* 14 Pick. 198, opinion of Judge Shaw.

1878
August Term.

Black
v.
Smith *et al.*

In the case of *Beall* v. *Brown,* 7 Md. 393, the question I have been considering was discussed by counsel, and some of the authorities cited above relied upon, and Judge Tuck, who delivered the opinion of the court, at page 398 says: "If he had a subject matter of set off, or a defense in mitigation of damages, or in bar of the action, he might have relied on it in the action against himself, and taken his appeal, if improperly rejected by the court; but if he prefers to treat it as a substantial cause of action, the non-residence of the party cannot give him a standing in court, as upon an equitable claim, where otherwise his remedy would be at law." See also 2d vol. of Leading Cases in Equity by White & Tudor 4th American edition, page 1344.

From the foregoing authorities I am satisfied, that failure of consideration attempted to be set up in the bill, if such it is, or can be considered, in any aspect under the allegations of the bill, was available and open to plaintiff in the said action at law in Maryland ; and that in fact it was embraced and covered by the issues in that cause, upon which trial and judgment were had; and if the plaintiff failed to get the benefit of his said alleged defense of failure of consideration, if it amounts to such, in law, it was not the fault of the court, or the law, so far as appears by the record, but owing to the *laches* and negligence of the plaintiff; under such circumstances the plaintiff would not be entitled to enjoin the said judgment as the case now stands, as he has had a day in court.

*Syllabus 2.*

In the case of *Shields, et al.* v. *McClung, et al.* 6 W. Va. 79, it was held, "that a party, to whom a day and opportunity have been allowed to make his defense against a demand set up against him in a court of law, but who has wholly failed to avail himself of them, will not be entertained in the court of chancery on a bill

1878
August Term.

Black
v.
Smith et al.

seeking relief against the judgment, which has been rendered against him in consequence of his default, upon grounds which might have been successfully taken in the court of law, unless some reason founded in fraud, accident or surprise, or some adventitious circumstance beyond the control of the party, be shown, why the defense was not made in that court. See also *Slack* v. *Wood* 9, Gratt. 40; *Meem* v. *Rucker*, 10 Gratt. 506; *Lyday* v. *Douple*, 17 Md. 188; *Enquirer Co.* v. *Robinson*, 24 Gratt. 548; *Wallace* v. *Richmond*, 26, Gratt. 67.

In the case of *Lyday* v. *Douple and others* above cited in the 17th Maryland Report 188, it was held, that "when a party fails to avail himself of his proper defense at law, and was not prevented from so doing by fraud or accident, or the act of the opposite party unmixed with any negligence or fault on his part, equity will not interfere." From this it seems the rule in Maryland as to relief against judgments of courts of law by injunction is very similar to the rule established in this State and Virginia.

It seems to me, that the plaintiff failed to avail himself of his alleged defense of failure of consideration in the court of law in Maryland, when he might have done so, if the facts alleged in the bill amount to a failure of consideration; and he has failed to show sufficiently any satisfactory reason founded in fraud, accident, surprise, or some adventitious circumstance beyond his control, why the alleged defense of failure of consideration was not made in said cause at law in the said circuit court of Frederick county, Maryland. I infer from what appears in the record, that the plaintiff was a citizen of Frederick county, Maryland, at the time said action at law was brought against him, and at the date of the judgment rendered against him by the circuit court of Frederick county aforesaid. This perhaps I should have stated earlier in this opinion. The mere averments by a plaintiff, in his bill of asking for an injunction to a judgment at law, are not sufficient; he must prove them. *Meem* v. *Rucker*, 10 Gratt. 506.

Syllabus 3.

It is proper to remark, that it is no where alleged in the bill or answer, that said invention had been patented, or that an application for a patent had been filed in the Patent Office at Washington, or that it was claimed, represented, or pretended that it had been patented, or that an application for a patent thereof had been filed in the Patent Office. It may be questionable, whether in any case a sale of an invention, which was never patented, carries with it anything of value ; but it is unnecessary to decide that question, from the fact that if it did not carry with it value, that defense should have been made in the circuit court of Frederick, Maryland, in the action at law, as it involved the question of want of consideration. No fraud or misrepresentation is sufficiently alleged against the defendant in the bill to put him on his defense therefor, although he flatly denies all the allegations in the bill, which in any manner impute or insinuate fraud. No sufficient issue as to fraud or misrepresentation is made by the plaintiff in the cause to authorize the admission of evidence in relation thereto by the plaintiff. Fraud or misrepresentation, as the pleadings stand before us, are not involved in the case. See opinion of the court in the case of *Davis* v. *Landcraft, et al.*, 10 W. Va. 739, 740, 744 and 745, and authorities cited.

But it is alleged, as a reason for relief in this court against the decree of the circuit court of Jefferson county, dissolving the injunction in the cause and dismissing the bill, that at a succeeding term of the said circuit court of Frederick county to that, at which judgment was rendered against the plaintiff, the plaintiff through his counsel entered a motion to strike out said judgment, which motion is still pending and undetermined in said last named court. It does appear by the record of the cause, in which judgment was rendered in Frederick county Maryland, that such a motion was entered in said court and it does not appear by that record that it was ever disposed of by the court. From the record and other

101

evidence in the cause it seems, that said motion was not disposed of by the court at the commencement of the suit at bar.

Whether a court of law of Maryland may receive a motion to strike out a final judgment, or grant a new trial after judgment, in a cause at a succeeding term after the close of the term, in which such judgment was rendered, where no such motion was made to the court before the close of the term, at which the judgment was rendered, I am not prepared to say. The Maryland law, or practice in such matters has not been brought to our attention by counsel. But be that as it may, I apprehend that the entering of said motion, to strike out the judgment at a subsequent term of the court, did not suspend the operation of the judgment, until the motion to strike out was determined by the court. But, if it did, then that was a matter of defense for plaintiff on his plea of *nul tiel record* in the action of debt in the circuit court of Jefferson county; and the circuit court of Jefferson county should in that event have given judgment on the plea of *nul tiel record* in favor of plaintiff (Black).

A court of equity will not interfere by injunction to correct simple errors of judgment in a court of law, or to give relief against a judgment of a court of law, because of mere error of judgment in such courts. The remedy in such case to the party aggrieved is by appeal, writ of error or *supersedeas,* in courts of appellate jurisdiction, and not by injunction. And as it seems to me, that the entering of said motion to strike out the judgment did not suspend the operation, or effect, of the judgment rendered in the cause at the previous term, the simple fact, that said motion to strike out was still pending and undetermined, when the circuit court of Jefferson county granted said injunction, and when it dissolved it, is no sufficient reason, under the circumstances appearing, why the circuit court should not have dissolved said injunction, and that this court should pronounce the decree of the circuit court dissolving the injunction

and dismissing the plaintiff's bill erroneous, especially as the said motion to strike out was entered on the 17th day of February, 1873, and the action at law in Jefferson county in the bill mentioned was not commenced until January or February, 1876, about three years after said motion was entered, and judgment was not entered in the last named action at law until November term, 1876, and the plaintiff did not file his bill of injunction in this cause until about the 1st of March, 1877, and the circuit court of Jefferson county did not make its decree dissolving the injunction in this cause until the 22d day of November, 1877, which was more than four and a half years after said motion to strike out.

The 5th and 6th sections of chapter 126 of the Code of 1868 of this State do not enlarge the jurisdiction of courts of equity, and were not so intended. The 5th section allowed the defendant by plea to make defenses in an action upon contract by way of set-off, which he could not do before in a court of law under the rules and principles of the common law. Some of the defenses allowed are such as pertain to equity jurisdiction, and when such equitable defense, or other defense allowed by the 5th section, is not pleaded and tried in the court of law, the defendant under the 6th section is not precluded from such relief in equity, as he would have been entitled to, if the 5th section had not been enacted. It may be, that since the rendition of the decree dissolving the injunction and disclaiming the plaintiff's bill the circuit court of Frederick county, Maryland, has struck out the said judgment rendered by it, or granted a new trial therein in some proper and lawful form for good and sufficient reasons, in the exercise of its proper jurisdiction. If so, it may perhaps be unjust and inequitable, that plaintiff should be required to pay the judgment enjoined in this case. In such case plaintiff perhaps will not be without a suitable remedy. But as there is nothing in the record before us showing, that said judgment has

been stricken out, &c., I express no opinion whatever as to this matter.

Upon the whole I am of opinion, that there is no error in the said decree of the circuit court of the county of Jefferson, rendered in this cause on the 22d day of November, 1877, and that the said decree must be affirmed, with costs and $30.00 damages to the appellee.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.